**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| TZEW HOLDCO LLC, *et al.*,[1] | Case No. 20-10910 (CSS) |
| Debtors. | (Joint Administration Requested) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS; (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "*Motion*"), dated April [●], 2020, of Apex Parks Group, LLC ("*Apex Parks*") and its affiliated debtors and debtors in possession (collectively, the "*Debtors*") in the above-captioned chapter 11 cases (collectively, the "*Cases*"), pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "*Bankruptcy Code*"), Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*"), seeking, among other things:

(1)    authorization for the Debtors to obtain post-petition loans, advances and other financial accommodations on an interim basis for a period through and including the date of the Final Hearing (as defined below) from Cerberus Business Finance, LLC, in its capacities as administrative agent and collateral agent (the "*DIP Agent*") for itself

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Apex Parks Group, LLC (5579); Apex Real Property Holdings, LLC (1013); Speedzone Beverage Company, LLC (2339); Speedzone Holdings, LLC (7913); Speedzone Management, LLC (2937); TZEW Holdco LLC (0252); and TZEW Intermediate Corp. (1058). The location of the Debtors' service address in these chapter 11 cases is: 18575 Jamboree Road, Suite 600, Irvine, CA 92612.

and the DIP Lenders (as defined below) and from the DIP Lenders, in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the DIP Credit Agreement (as defined below), and in accordance with this Order, secured by security interests in and liens upon all of the Collateral (as defined below) pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code;

(2)     authorization for the Debtors to enter into, be bound by, and perform under the debtor-in-possession credit facility (the "*DIP Facility*"), entitled "Senior Secured, Superpriority Debtor-in-Possession Credit Agreement", dated as of April [●], 2020, by and among the Debtors, the DIP Agent, and the lenders from time to time party thereto (the "*DIP Lenders*") which agreement is attached to the Motion as <u>Exhibit B</u> (as it may be modified, supplemented, amended or restated from time to time, the "*DIP Credit Agreement*", and together with the other Loan Documents, as defined in the DIP Credit Agreement, the "*DIP Loan Documents*");

(3)     modification of the automatic stay to the extent hereinafter set forth;

(4)     the grant to the DIP Agent, for its benefit and the benefit of the DIP Lenders, of superpriority administrative claim status pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all obligations under the DIP Credit Agreement and DIP Loan Documents (the "*DIP Obligations*");

(5)     authorization for the Debtors to use the Collateral (including Cash Collateral (as defined below) in accordance with the Budget (as defined below) and subject to the terms, restrictions, and other conditions of the DIP Credit Agreement) that is subject to the existing liens and security interests in favor of the Prepetition Agent on behalf of the Prepetition Lenders (as each of those terms is defined below), and granting adequate protection to these parties as set forth herein;

(6)     authorization for the  Debtors to use the proceeds of the loans under the DIP Facility (the "*DIP Loans*"), subject to the terms, restrictions, and other conditions

2

of the DIP Credit Agreement, to (a) upon entry of this Interim Order (as defined below), repay the outstanding Revolving Loan A-1 Obligations (as defined in the Prepetition Credit Agreement (as defined below)), (b) pay fees and expenses related to the DIP Credit Agreement and the Cases, and (c) fund working capital of the Debtors and other general corporate purposes, in each case, to the extent set forth in the Budget and permitted under DIP Loan Documents; and

(7)    the setting of a final hearing on the Motion; and

The initial hearing on the Motion having been held by this Court on April 14, 2020 (the "*Interim Hearing*"); and

It appearing that due and appropriate notice of the Motion, the relief requested therein, and the Interim Hearing (the "*Notice*") was served by the Debtors in accordance with Bankruptcy Rule 4001(c) and Local Rule 4001-2 on (i) the Prepetition Agent, (ii) counsel to the Prepetition Agent, (iii) the Prepetition Lenders, (iv) the DIP Agent, (v) counsel to the DIP Agent, (vi) the DIP Lenders, (vii) the Office of the United States Trustee for the District of Delaware (the "*U.S. Trustee*"), (viii) the holders of the thirty (30) largest unsecured claims against the Debtors' Estates (on a consolidated basis) (the "*30 Largest Unsecured Creditors*"), (ix) the United States Attorney's Office for the District of Delaware, (x) the Internal Revenue Service, (xi) the Securities and Exchange Commission, (xii) the office of the attorneys general for the states in which the Debtors operate, and (xiii) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "*Noticed Parties*"); and

This Court having reviewed the Motion and any responses and objections thereto, the *Declaration of Scott Avila, Chief Restructuring Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. [●] (the "*First Day Declaration*"), the other filings and pleadings made by the Debtors, the evidence and testimony presented at the Interim Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    Petition.  On April 8, 2020 (the "**Petition Date**"), each Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtors continue as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    Jurisdiction and Venue.  The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue in this Court over the Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c) and Local Rule 4001-2.

D.    Findings Regarding the Prepetition Lenders, the Prepetition Collateral and the Prepetition Obligations.  Without prejudice to the rights of any other non-Debtor party in interest as provided in Section 9.1 of this Order, the Debtors admit, stipulate, acknowledge and agree that:

(i)    *Prepetition Credit Agreement*: As of the Petition Date, the Debtors, the financial institutions parties thereto from time to time as lenders (the "**Prepetition Lenders**"), and Cerberus Business Finance, LLC, as prepetition administrative agent and collateral agent (in such capacities and together with any successors thereto, the "**Prepetition Agent**") are parties to that certain Financing Agreement dated as of September 18, 2014 (as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, including, without limitation by that certain Amendment No. 1 to Financing Agreement, dated as of April 30, 2015, that certain Amendment No. 2 to Financing Agreement, dated as of September 1, 2015, that certain Amendment No. 3 to Financing Agreement, dated as of May 13, 2016, that certain Amendment No. 4 to Financing Agreement, dated as of February 23, 2018, that certain Amendment No. 5 to Financing Agreement, dated as of January 27, 2019, that certain Amendment No. 6 to Financing Agreement, dated as of December 2, 2019, that certain

4

Amendment No. 7 to Financing Agreement, dated as of January 13, 2020, that certain Amendment No. 8 to Financing Agreement, dated as of January 30, 2020, that certain Amendment No. 9 to Financing Agreement, dated as of February 14, 2020, that certain Amendment No. 10 to Financing Agreement, dated as of February 21, 2020, and that certain Amendment No. 11 to Financing Agreement, dated as of March 31, 2020, and that certain Amendment No. 12 to Financing Agreement, dated as of April 8, 2020 the "*Prepetition Credit Agreement*" and together with the other Loan Documents (as defined in the Prepetition Credit Agreement), in each case as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, collectively, the "*Prepetition Loan Documents*"). The Prepetition Loan Documents provide that (a) the Debtors are obligated for principal, accrued and unpaid interest, fees, costs, expenses, indemnities, and other amounts arising under the Prepetition Loan Documents (the "*Prepetition Obligations*"), which are comprised of revolving loan obligations (the "*Prepetition Revolving Loan Obligations*") (comprised of Revolving Loan A-1 Obligations, Revolving Loan A Obligations, and Revolving Loan B Obligations) and term loan obligations (the "*Prepetition Term Loan Obligations*"), and (b) all of the Prepetition Obligations are secured by first priority liens granted to the Prepetition Agent for its benefit and the benefit of the Prepetition Lenders (the "*Prepetition Liens*") on substantially all of the property of the Debtors, as described and defined in the Prepetition Loan Documents (the "*Prepetition Collateral*"), which includes cash collateral within the meaning of Bankruptcy Code section 363(a) ("*Cash Collateral*").

(ii)     *Prepetition Obligations and the Prepetition Liens*: As of the Petition Date, the outstanding Prepetition Obligations totaled no less than $78,910,287.89, including (i) no less than $25,263,287.89 of Prepetition Revolving Loan Obligations (comprised of no less than $6,779,294.00 of Revolving Loan A-1 Obligations, no less than $10,000,000 of Revolving Loan A Obligations, and no less than $8,483,993.89 of Revolving Loan B Obligations) and (ii) no less than $53,647,000 of Prepetition Term Loan Obligations, in all cases inclusive of all principal but exclusive of all accrued and unpaid interest, costs, expenses, and

5

fees owed to the Prepetition Agent and Prepetition Lenders. The Debtors further acknowledge, agree and stipulate that (a) the Prepetition Liens (1) are valid, binding, enforceable and perfected liens in the Prepetition Collateral, (2) were granted to the Prepetition Agent for the benefit of the Prepetition Lenders for fair consideration and reasonably equivalent value, (3) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (4) are subject and subordinate only to valid, perfected and unavoidable liens permitted under the applicable Prepetition Loan Documents, but only to the extent that (x) such liens are permitted by the applicable Prepetition Loan Documents to be senior to the applicable Prepetition Liens and (y) such liens are actually senior to the applicable Prepetition Liens under applicable law, and (b)(1) all of the Prepetition Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the applicable Prepetition Loan Documents, (2) no setoffs, recoupments, offsets, defenses or counterclaims to any of the Prepetition Obligations exist, and (3) no portion of the Prepetition Obligations or any payments made to or for the benefit of the Prepetition Agent or any of the Prepetition Lenders are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)    *Proof of Claim*. The foregoing acknowledgment by Debtors of the Prepetition Obligations and the rights, priorities and protections granted to the Prepetition Agent for its benefit and the benefit of the Prepetition Lenders pursuant to the Prepetition Loan Documents shall be deemed a timely filed proof of claim on behalf of the Prepetition Agent and the Prepetition Lenders in these Cases and neither the Prepetition Agent nor the Prepetition Lenders shall be required to file any additional proofs of claim with respect to the Prepetition Loan Obligations.

E.    Findings Regarding the Post-Petition Financing.

(i)    *Postpetition Financing*. The Debtors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend,

6

certain loans, advances and other financial accommodations on the terms and conditions set forth in this Order and the DIP Loan Documents.

(ii)    *Need for Postpetition Financing.*    The Debtors do not have sufficient available sources of working capital, including cash collateral, to pay administrative expenses and conclude a sale of their assets without the financing requested under the Motion. As of the Petition Date, the Debtors are actively marketing their assets for sale. The Debtors have filed these cases with a proposed purchaser of substantially all of their assets, subject to receipt of a higher or otherwise better bid, and need financing to administer the Cases. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Agent and DIP Lenders as set forth in this Order and the DIP Loan Documents is vital to the Debtors' ability to maximize the value of the assets of their bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "*Estates*") through a sale process. Accordingly, the Debtors have an immediate need to obtain the postpetition financing in order to, among other things, preserve and maximize the value of the assets of their Estates.

(iii)    *No Credit Available on More Favorable Terms.*    The Debtors are unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or solely based on the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable solely under section 364(c)(2) or 364(c)(3) of the Bankruptcy Code. The Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Credit Agreement.

(iv)    *Budget.*    The Debtors have prepared and delivered to the DIP Agent and the DIP Lenders an initial five-week budget, a copy of which is attached hereto as Exhibit 1 (the "Initial DIP Budget"). The Initial DIP Budget has been approved by the DIP Agent and the required DIP Lenders pursuant to the terms of the DIP Credit Agreement and

DOCS_SF:103065.10 04420/001

constitutes an "Approved Budget" under the terms of and as defined in the DIP Credit Agreement. The Initial DIP Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, projections for the periods covered thereby. The DIP Agent and the DIP Lenders are relying upon the Debtors' compliance with the Initial DIP Budget in accordance with the terms of the DIP Credit Agreement, the other DIP Loan Documents and this Order in determining to enter into the post-petition financing arrangements provided for herein.

(v)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The terms of the DIP Loan Documents and this Order reflect the Debtors' exercise of their prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Loan Documents and this Order have been negotiated in good faith and at arms' length by and among the Debtors, on the one hand, and the DIP Agent, the DIP Lenders, the Prepetition Lenders and the Prepetition Agent, on the other hand, with all parties being represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by the DIP Agent and the DIP Lenders as that term is used in section 364(e) of the Bankruptcy Code.

(vi)    *Good Cause*. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interests of and will benefit the Debtors, their creditors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and avoid immediate and irreparable harm to the Debtors, their creditors, and their assets.

(vii)    *Immediate Entry*. Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2(b). No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Order, or any objections that were made (to the extent such objections have not been withdrawn or resolved) are hereby overruled.

DOCS_SF:103065.10 04420/001

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    <u>Authorization and Conditions to Financing.</u>

1.1    <u>Motion Granted</u>.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to as the "***Interim Order***."

1.2    <u>Authorization to Borrow and Use Loan Proceeds</u>.  The Debtors are hereby authorized to enter into, be bound by, and perform under the DIP Facility and all DIP Loan Documents and to immediately borrow, pursuant to the DIP Credit Agreement, an aggregate amount of Revolving Loans (as defined in the DIP Credit Agreement) not to exceed $11 million during the Interim Availability Period, provided that disbursements of such amount are in accordance with the Initial DIP Budget or any subsequent Approved Budget (any such budget, whether the Initial DIP Budget or a subsequent Approved Budget, to the extent currently in force, the "<u>Budget</u>"), the DIP Loan Documents and this Interim Order.  Upon the entry of this Interim Order, the Debtors shall be authorized to use the Collateral, including Cash Collateral, and to draw on the DIP Facility to make any disbursement as specifically provided in the Budget (subject to the permitted variances as set forth in the DIP Loan Documents), but solely in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents.  The Debtors are hereby authorized to, immediately upon entry of this Interim Order, pay the Revolving Loan A-1 Obligations in full in cash with proceeds of the DIP Loans to the Prepetition Agent, on its behalf and on behalf of the Prepetition Lenders.

1.3    <u>DIP Loan Documents</u>

1.3.1    <u>Approval</u>.  The DIP Loan Documents and each term, condition and covenant set forth therein are approved.  All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors, the DIP Agent and the DIP Lenders, and of each Debtor's assumption and adoption of all of the

9

terms, conditions, and covenants of the DIP Credit Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment when due of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, and such fees and expenses, including, without limitation, all of the DIP Agent's and the DIP Lenders' consultant fees, professional fees, (including attorney fees and expenses) as more fully set forth in the DIP Loan Documents.

1.3.2    Amendment.    Subject to the terms and conditions of the DIP Credit Agreement and the other DIP Loan Documents, the Debtors, the DIP Agent and the DIP Lenders may amend, modify, supplement or waive any provision of the DIP Loan Documents (an "*Amendment*") without further approval or order of the Court.

Section 2.    Liens; Superpriority Administrative Claim Status.

2.1    Priority and Liens.

2.1.1    Lien Grant.    To secure the prompt payment and performance of any and all obligations of the Debtors to the DIP Agent and the DIP Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the other DIP Lenders, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtors' Estates may have (but subject to the Carve-Out Expenses (as defined below) and the Permitted Priority Liens (as defined in the DIP Credit Agreement) in and upon all of the Collateral (as defined below) (collectively, the "*DIP Liens*").    Notwithstanding the foregoing or anything to the contrary contained in the DIP Credit Agreement, the grant to the DIP Agent and the DIP Lenders of liens on and security interests in the proceeds of Avoidance Actions (as hereinafter defined) (other than proceeds from Avoidance Actions arising under section 549 of the Bankruptcy Code, to which the DIP Liens shall attach immediately), are subject to entry of an order granting the relief requested in the Motion on a final basis (the "*Final Order*" and together with this Interim Order, the "*Financing Orders*").

10

2.1.2  <u>Collateral</u>.    For purposes of this Interim Order, the term

"**Collateral**" shall have the meaning ascribed to such term in the DIP Loan Documents, which

term includes the following: all of the existing and after-acquired real and personal, tangible and

intangible, property and assets of the Debtors , including, but not limited to, all cash, cash

equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory,

instruments, documents, securities (whether or not marketable), equipment, fixtures, real

property interests, franchise rights, patents, tradenames, trademarks, copyrights, intellectual

property, general intangibles, payment intangibles, rights under section 506(c) of the Bankruptcy

Code, and all other property or "property of the estate" (as defined in section 541 of the

Bankruptcy Code) of any kind or nature, investment property, supporting obligations, letter of

credit rights, licenses, operating certificates, permits, causes of action (excluding causes of

action, claims, objections and defenses arising under or deriving from sections 506(d), 510, 542,

544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code, or any similar state

or federal law ("**Avoidance Actions**") but including the proceeds of such Avoidance Actions)

and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash

proceeds of all of the foregoing, wherever located, including insurance proceeds, noncash

proceeds or any other proceeds of the foregoing; <u>provided</u>, <u>however</u>, that, the Collateral shall not

include (i) any Avoidance Actions (provided that, subject to entry of the Final Order, the

proceeds of Avoidance Actions shall no longer be excluded), (ii) any agreements, permits,

licenses, or the like solely in the event and to the extent that a grant of a DIP Lien on such

license, contract, or agreement results in a termination of any such license, contract, or

agreement or would render such license, contract or agreement non-assumable or non-assignable

under the Bankruptcy Code (other than to the extent that any such term would be rendered

ineffective pursuant to Sections 9-406, 9-407, or 9-408 of the Uniform Commercial Code (or any

successor provision or provisions)) and, in any event, immediately upon the ineffectiveness,

lapse or termination of any such terms or default under such license, contract or agreement, the

Collateral shall include, and the applicable Debtor shall be deemed to have granted a security

11

interest in, all such licenses, contracts, or agreements as if such terms had never been in effect; provided, however, that the Collateral shall include any and all proceeds of any of such property and assets described in this clause and (iii) any other Excluded Assets (as defined in the DIP Credit Agreement); provided, further, that, any agreement, permit, license, or the like not constituting Collateral under the foregoing clauses (i) through (iii) (except to the extent such proceeds themselves constitute Excluded Assets) shall constitute Collateral from and after such time as the lessor, licensor, grantor or other party to such agreement, permit, license, or the like consents to the grant of a DIP Lien in favor of the DIP Agent in such agreement, permit, license, or the like or the prohibition against granting a Lien therein in favor of the DIP Agent shall cease to be effective. Notwithstanding the foregoing or anything to the contrary contained in the DIP Loan Documents, the attachment of the DIP Liens on the proceeds of Avoidance Actions (other than proceeds from Avoidance Actions arising under section 549 of the Bankruptcy Code, to which the DIP Liens shall attach immediately), and on any rights under section 506(c) of the Bankruptcy Code, shall be subject to the entry of the Final Order.

 2.1.3 <u>Lien Priority</u>. The DIP Liens shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with section 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that the DIP Liens shall be subject to the Permitted Priority Liens and to the Carve-Out Expenses to the extent provided for in Section 2.3 of this Interim Order. The DIP Liens and the Superpriority Claim (as defined below) (a) shall not be subject to sections 510, 542, 549, 550, or 551 of the Bankruptcy Code, (subject to entry of the Final Order) the "equities of the case" exception of section 552 of the Bankruptcy Code, or (subject to entry of the Final Order) section 506(c) of the Bankruptcy Code, (b) shall be senior in priority and right of payment to (x) the Prepetition Obligations, (y) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise and (z) any intercompany or affiliate liens or claims of the Debtors, and (c)

shall be valid and enforceable against any trustee or any other estate representative appointed or elected in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each, a "*Successor Case*"), and/or upon the dismissal of any of the Cases or any Successor Case.

2.1.4   Enforceable Obligations.    The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against the Debtors, their Estates and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable, disallowable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) or based on any Avoidance Actions), or subject to any avoidance, disallowance, impairment, reduction, setoff, offset, recoupment, recharacterization, disgorgement, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, surcharge, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

2.1.5   Post-Petition Lien Perfection.    This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien (each, a "*Perfection Act*").  Notwithstanding the foregoing, if the DIP Agent shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, the DIP Agent is authorized to perform such act, and the Debtors are authorized to perform such act to the extent necessary or reasonably required by the DIP Agent, which act or acts shall be deemed to have been accomplished as of the Petition Date, notwithstanding the date and time actually accomplished,

13

and in such event, the subject filing or recording office is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law. The DIP Agent, on behalf of the DIP Lenders, may choose to file, record, or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, and/or record such certified copy of this Interim Order in accordance with applicable law. Should the DIP Agent so choose and attempt to file, record, and/or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order. For the avoidance of doubt, the existing Control Agreements (as defined in the DIP Loan Agreement) shall be considered "DIP Loan Documents" and Perfection Acts for all purposes hereunder and thereunder.

2.2    Superpriority Administrative Expense.    For all DIP Obligations now existing or hereafter arising pursuant to this Interim Order, the DIP Loan Documents, or otherwise, the DIP Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 364(c)(1), 546, 726 or 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "***Superpriority Claim***"); provided, however, that the Superpriority Claim: (a) shall be subject only to the payment of the Carve-Out Expenses and (b) shall be payable out of the proceeds of Avoidance Actions after entry of the Final Order. The Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code,

14

shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including, subject to entry of the Final Order, proceeds of Avoidance Actions), subject only to the Carve-Out Expenses.  Other than as expressly provided in the DIP Credit Agreement and this Interim Order with respect to the Carve-Out Expenses, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 326, 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these Cases, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the Superpriority Claim or the DIP Obligations, or with any other claims of the DIP Agent or DIP Lenders arising hereunder.

    2.3   <u>Carve-Out Expenses</u>.  Notwithstanding anything in this Interim Order, the DIP Loan Documents, or the Prepetition Loan Documents to the contrary, upon the delivery by the DIP Agent to the Debtors' lead counsel, the U.S. Trustee, and lead counsel to the Committee (if a Committee has been appointed) of a Carve-Out Trigger Notice (as defined in the DIP Credit Agreement) identifying an Event of Default (the date upon which such notice is delivered to the Debtors' lead counsel, the "*Carve-Out Trigger Date*"), the DIP Agent's and the DIP Lenders' liens, claims and security interests in the Collateral and their Superpriority Claim shall, in each instance, be subject to the right of payment of the following expenses (without any duplication of fees and expenses of any professionals in connection with any services rendered to more than one Debtor) (the "*Carve-Out Expenses*"):

    a.   all incurred or accrued professional fees and expenses of professionals for the Debtors and professionals for the Committee to the extent (i) allowed at any time by the Bankruptcy Court (if required), regardless of whether allowed by interim order, procedural order or otherwise, (ii) incurred or accrued through the Carve-Out Trigger Date, to the extent allowed prior to or after the Carve-Out Trigger Date and (iii) up to and as limited by the respective aggregate amounts for each professional for the Debtors and each professional for the Committee or category of

15

professionals for the Debtors and category of professionals for the Committee set forth in the Budget through the Carve-Out Trigger Date, and, upon being earned and payable, the success fees payable to Imperial Capital, LLC ("Imperial") per the terms of its engagement letter and any order of the Court approving such engagement, in an amount not to exceed $500,000 less the aggregate amount of any monthly fees (X) paid prepetition or (Y) funded under the Budget postpetition (provided that the terms of employment of Imperial are acceptable to the DIP Agent and the Prepetition Agent and approved by the Court), in each case less the amount of any prepetition retainers received by such professionals and not previously applied to fees and expenses (for clarity, all requirements in the foregoing clauses (i) through (iii) must be satisfied for the inclusion of the fees and expenses described by this clause (a) in the Carve-Out Expenses);

        b.    all accrued and unpaid fees, disbursements, costs and expenses incurred by the professionals for the Debtors from and after the Carve-Out Trigger Date, to the extent allowed at any time, in an aggregate amount not to exceed $250,000.00 less the remaining amount of prepetition retainers received by such professionals not previously applied to the fees, disbursements, costs and expenses set forth in clause (a)(ii) above;

        c.    all accrued and unpaid fees, disbursements, costs and expenses incurred by the professionals for the Committee from and after the Carve-Out Trigger Date, to the extent allowed at any time, in an aggregate amount not to exceed $50,000.00; and

        d.    allowed administrative expenses (i) for fees payable to the Office of the U.S. Trustee pursuant to 28 USC §1930(a)(6), as determined by agreement of the U.S. Trustee or by final order of the Bankruptcy Court, and (ii) for fees required to be paid to the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 156(c).

Prior to the Carve-Out Trigger Date: (A) an amount sufficient to pay the Carve-Out Expenses set forth in clause (a) above may be funded by the Debtors on a weekly basis into a trust account

16

held by Debtors' counsel (the "Professional Fee Trust Account") in accordance with the approved Budget, (B) the Debtors shall be permitted to borrow under the DIP Credit Agreement to fund the Professional Fee Trust Account in the amounts contemplated under clause (a) above, and (C) the Debtors shall be permitted to pay, from the Professional Fee Trust Account, as and when the same may become due and payable, the allowed professional fees of each Debtor and Committee professional; provided, however, that notwithstanding anything contained herein, there shall be no requirement that any amounts in respect of any success fees that may be earned by Imperial be deposited into the Professional Fee Trust Account. Following the Carve-Out Trigger Date, the Debtors shall be permitted to borrow under the DIP Credit Agreement to fund the Professional Fee Trust Account for all Carve-Out Expenses set forth in clause (a) above to the extent not previously funded. Any excess amounts remaining in the Professional Fee Trust Account after payment of the Carve-Out Expenses shall be refunded to the Debtors and shall remain DIP Collateral. Notwithstanding the foregoing, none of the Carve-Out Expenses, proceeds from the DIP Facility or Cash Collateral may be used (i) to investigate (other than by a Committee, subject to a cap of $50,000, and further subject to the limitations contained in Section 9.1, below) or challenge in any respect the validity, perfection, priority, extent, or enforceability of any of the Prepetition Loan Documents or the liens or security interests securing the obligations arising under the Prepetition Loan Documents; (ii) to delay, challenge, or impede any rights of the DIP Agent and DIP Lenders under any of the DIP Loan Documents or this Interim Order or to object to or oppose any action authorized under the DIP Loan Documents, this Interim Order, or the Final Order; or (iii) to pursue any claims or causes of action of any kind against the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders in their respective capacities as agents or lenders under the DIP Loan Documents or the Prepetition Loan Documents, as the case may be.

    2.4    Use of Cash Collateral; Adequate Protection.

    2.4.1    Authorization to Use Cash Collateral. Subject to the terms and conditions of this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents,

17

the Debtors shall be and are hereby authorized to use, in accordance with the Budget, Cash Collateral subject to the Prepetition Liens to, (a) upon entry of this Interim Order, repay the outstanding Revolving Loan A-1 Obligations, (b) pay fees and expenses related to the DIP Credit Agreement and the other DIP Loan Documents, and (c) fund working capital to maintain and, as applicable, operate the Debtors' businesses and for other general corporate purposes, in each case, to the extent set forth in the Budget and permitted under DIP Loan Documents. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business (except with respect to the authorization to use the proceeds of the DIP Loans to repay the outstanding Revolving Loan A-1 Obligations), or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Credit Agreement, the other DIP Loan Documents, or the Budget. In accordance with the provisions of the DIP Credit Agreement (and without limiting the Debtors' obligations thereunder), the Debtors shall timely deliver to the DIP Agent updated cash flow forecasts and Variance Reports (as defined in the DIP Credit Agreement) and comply with all other reporting covenants and obligations described in the DIP Credit Agreement.

2.4.2    Prepetition Adequate Protection.

a.    *Adequate Protection Replacement Liens.*    As adequate protection for the diminution in value of their interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtors' use of such Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay, the incurrence of the DIP Obligations, and the subordination to the Carve-Out Expenses, the Prepetition Agent, for its benefit and the benefit of the Prepetition Lenders, in respect of the Prepetition Obligations (including, until such time as they have been repaid in full, the Revolving Loan A-1 Obligations), is hereby granted, solely to the extent of any such diminution in value and pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "***Adequate Protection Replacement Liens***"); provided, however, that to the extent

18

that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event the Prepetition Agent shall be granted an Adequate Protection Replacement Lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests. The Adequate Protection Replacement Liens shall be junior and subordinate only to (i) the DIP Liens, (ii) the Permitted Priority Liens, (iii) the Carve-Out Expenses, and (iv) any other liens permitted to be senior to the DIP Liens by the DIP Loan Documents. The Adequate Protection Replacement Liens and the Adequate Protection Claim (as defined below) (A) shall not be subject to sections 510, 542, 549, 550, or 551 of the Bankruptcy Code, (subject to entry of a Final Order) the "equities of the case" exception of section 552 of the Bankruptcy Code or, subject to Section 9.3 or this Interim Order, section 506(c) of the Bankruptcy Code, (B) shall be senior in priority and right of payment to (x) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise or (y) any intercompany or affiliate liens or claims of the Debtors, and (C) shall be continuing, binding, valid, perfected, unavoidable, and enforceable against any trustee or any other estate representative appointed or elected in the Cases or any Successor Case, and/or upon the dismissal of any of the Cases or any Successor Case. Notwithstanding any of the foregoing, the attachment of the Adequate Protection Replacement Liens on the proceeds of Avoidance Actions (other than the proceeds of Avoidance Actions arising under section 549 of the Bankruptcy Code, to which the Adequate Protection Replacement Liens shall attach immediately) shall be subject to the entry of the Final Order.

b.      *Prepetition Section 507(b) Priority Claim.* To the extent that the Adequate Protection Replacement Liens are insufficient protection against the diminution in value of their interests in the Prepetition Collateral (including Cash Collateral) on account of the Debtors' use of such Prepetition Collateral (including Cash

Collateral), the incurrence of the DIP Obligations, the imposition of the automatic stay, and the subordination to the Carve-Out Expenses, the Prepetition Agent, for its benefit and the benefit of the Prepetition Lenders, in respect of the in respect of the Prepetition Obligations (including, until such time as they have been repaid in full, the Revolving Loan A-1 Obligations), is hereby granted, solely to the extent of any such diminution of value and pursuant to section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases with priority over all administrative expense claims and unsecured claims against the Debtors or their Estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 364(c)(1), 546, 726 or 1114 and any other provision of the Bankruptcy Code (the "*Adequate Protection Claim*"); provided, however, that the Adequate Protection Claim shall be junior and subordinate only to (i) the right of payment of the DIP Obligations owing to the DIP Lenders, (ii) the Superpriority Claim granted in favor of DIP Agent, for its benefit and the benefit of the DIP Lenders, pursuant to this Interim Order, and (iii) the Carve-Out Expenses.  The Adequate Protection Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, subject to entry of the Final Order, the proceeds of Avoidance Actions, subject only to (i) the right of payment of the DIP Obligations owing to the DIP Agent and DIP Lenders, (ii) the Superpriority Claim granted in favor of DIP Agent, for its benefit and the benefit of the DIP Lenders, pursuant to this Interim Order, and (iii) the Carve-Out Expenses.

c.      *Payment of Fees, Costs and Expenses*:  The Debtors shall pay, no later than ten (10) days following receipt by the Debtors of any invoice (which may be provided in summary fashion or redacted to protect privilege) therefore, with a copy to the Committee (or the 30 Largest Creditors if no Committee has been appointed) and United States Trustee: the prepetition (if any) and postpetition fees and out-of-pocket expenses for the professionals advising the DIP Agent and Prepetition Agent, including KTBS Law LLP and Young Conaway Stargatt & Taylor LLP, and any other advisors to the DIP Agent and the Prepetition Agent; provided, however, that no payment shall be made by the Debtors if an objection is made by the Debtors, the Committee, or the United States Trustee within such ten (10) day period (except to the extent such fees and expenses are not subject to the objection) unless consensually resolved by the affected professional and objecting party or approved by the Court.  The fees and expenses paid hereunder shall not otherwise be subject to separate approval by the Court or to the United States Trustee Guidelines.

d.      *Payment of Post-Petition Interest*.  To the extent it is later determined by an order of the Court that the Prepetition Obligations were oversecured, accrual of interest on all of the outstanding Prepetition Obligations at the default rate from and after the Petition Date.

e.      *Reservation of Rights*.    Notwithstanding any other provision hereof, the grant of adequate protection pursuant to the terms of this Interim Order is without prejudice to the right of the Prepetition Agent or the Prepetition Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors, the Committee, or any other party in interest to contest any such modification.

Section 3.      Authorization to Pay Professional Fees of DIP Agent and DIP Lenders.

3.1      Any and all fees paid or required to be paid in connection with the DIP Loan Documents (including, but not limited to, the fees and expenses of the DIP Agent and the

DIP Lenders) are hereby authorized and shall be paid as set forth in the DIP Credit Agreement and Section 2.4.2.c, above.

Section 4.    Sale Process.

4.1    Sale Process.  The Debtors have indicated that they intend to conduct a process to sell (the "*Sale*") substantially all of their assets (the "*Acquired Assets*").  Subject to the entry of the Final Order, the Debtors are authorized to immediately and indefeasibly distribute directly (or cause any purchaser of the Acquired Assets to immediately and indefeasibly distribute directly) to the DIP Agent for its benefit and the benefit of the DIP Lenders, and the Prepetition Agent for its benefit and the benefit of the Prepetition Lenders, as the case may be, the proceeds from the Sale of the Acquired Assets, up to the amount of the DIP Obligations and Prepetition Obligations, respectively, outstanding as of the closing of the Sale, including, but not limited to, principal, accrued and unpaid interest, and all outstanding fees and expenses (except to the extent such Prepetition Obligations are credit bid as part of a purchase of the Acquired Assets as authorized, subject to entry of the Final Order, by Section 4.3 below).

4.2    Sale Milestones.  As a condition to funding under the DIP Facility, the Debtors shall achieve the following timeline milestones (the "*Sale Milestones*") in connection with the Sale of the Acquired Assets, in each case in a manner satisfactory to the DIP Agent and the Prepetition Agent:

a.    entry, no later than April 23, 2020, of an order of the Court, satisfactory to the DIP Agent and the Prepetition Agent, approving certain bid and sale procedures (the "Bidding Procedures Order"), approving the form and manner of notice of the Sale and assumption and assignment of executory contracts and unexpired leases in connection therewith, and scheduling (i) the Bid Deadline (as defined in the DIP Credit Agreement) for a date that is no later than May 7, 2020, (ii) the Auction Date (as defined in the DIP Credit Agreement) for a date that is no later than May 8, 2020, and (iii) the Sale Hearing (as defined in the DIP Credit Agreement) for a date that is no later than

22

May 11, 2020;

      b.     entry of an order of the Court, satisfactory to the DIP Agent and the Prepetition Agent, approving the Debtors' retention of an investment banking firm acceptable to the DIP Agent and the Prepetition Agent no later than April 30, 2020 (it being understood that Imperial Capital, LLC is acceptable);

      c.     entry of an order of the Court, satisfactory to the DIP Agent and the Prepetition Agent, approving the Sale (the "*Sale Order*") no later than May 11, 2020 or such later date agreed to by the DIP Agent and Prepetition Agent in their sole and absolute discretion; and

      d.     consummation of the Sale no later than May 14, 2020 or such later date agreed to by the DIP Agent and Prepetition Agent in their sole and absolute discretion.

      4.3    <u>Credit Bid Rights</u>.  In connection with any sale of all or substantially all of the Acquired Assets, the Prepetition Agent shall have the absolute right to credit bid any portion or all of the Debtors' outstanding obligations under the Prepetition Credit Agreement pursuant to Bankruptcy Code section 363(k), and any bid submitted by the Prepetition Agent shall be deemed a "qualified bid" under the Bidding Procedures Order.

Section 5.    <u>Cash Management System; Control Over Debtors' Accounts</u>.  The Debtors shall maintain their existing cash management system to the extent set forth in the DIP Loan Documents unless the DIP Agent, in its sole and absolute discretion, consents in writing to any proposed modification to such cash management system; <u>provided</u>, <u>however</u>, that the Debtors shall be authorized, at the direction of the DIP Agent and Prepetition Agent to enter into amendments to their existing cash management agreements.  From and after the date of the entry of this Interim Order, all collections and proceeds of any Collateral and all Cash Collateral which shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which collections and collateral proceeds were deposited under the Prepetition

Loan Documents (or in such other accounts as are designated by the DIP Agent from time to time). In addition, the DIP Agent shall be deemed, on account of itself and the Prepetition Agent, without any further action of any kind, to have "control" over all of the Debtors' bank accounts within the meaning of Sections 8-106, 9-104, 9-105, 9-106, 9-107 and 9-314 of the New York Commercial Code.

Section 6.    Proof of Claim. Any order entered, or to be entered, by the Court concerning the establishment of a bar date in any of the Cases or in any Successor Cases shall not apply to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders.

　　6.1    Prepetition Term Loan Obligations. The Prepetition Agent, on behalf of itself and the Prepetition Lenders, shall be deemed to have filed a timely proof of claim in the Cases in an amount equal to no less than $53,647,000, inclusive of principal but exclusive of all accrued and unpaid interest, costs, expenses, and fees owed to the Prepetition Agent and Prepetition Lenders on account of the Prepetition Term Loan Obligations. The Prepetition Agent shall not be required to file any other proof of claim in the Cases on behalf of itself or the Prepetition Lenders setting forth the Prepetition Term Loan Obligations, or any portion thereof. Notwithstanding any provision to the contrary in any order to be entered by the Court concerning the establishment of a bar date in any of the Cases or in any successor cases, the Prepetition Agent, on behalf of itself and the Prepetition Lenders, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it deems appropriate) one or more proofs of claim in each of the Cases or in any successor cases for any claim allowed herein. Subject to Section 9.1 hereof, any and all payments made to and accepted by the Prepetition Agent on behalf of the Prepetition Lenders or made directly to the Prepetition Lenders, whether prepetition or postpetition, in connection with the Prepetition Term Loan Obligations or this Interim Order are final and not subject to avoidance or recovery by the Debtor or any other entity under chapter 5 of the Bankruptcy Code or otherwise.

　　6.2    Prepetition Revolving Loan Obligations. The Prepetition Agent, on behalf of itself and the Prepetition Lenders, shall be deemed to have filed a timely proof of claim

in the Cases in an amount equal to no less than $25,263,287.89, inclusive of principal but exclusive of all accrued and unpaid interest, costs, expenses, and fees owed to the Prepetition Agent and Prepetition Lenders on account of the Prepetition Revolving Loan Obligations. The Prepetition Agent shall not be required to file any other proof of claim in the Cases on behalf of itself or the Prepetition Lenders setting forth the Prepetition Revolving Loan Obligations, or any portion thereof. Notwithstanding any provision to the contrary in any order to be entered by the Court concerning the establishment of a bar date in any of the Cases or in any successor cases, the Prepetition Agent, on behalf of itself and the Prepetition Lenders, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it deems appropriate) one or more proofs of claim in each of the Cases or in any successor cases for any claim allowed herein. Subject to Section 9.1 hereof, any and all payments made to and accepted by the Prepetition Agent on behalf of the Prepetition Lenders or made directly to the Prepetition Lenders, whether prepetition or postpetition, in connection with the Prepetition Revolving Loan Obligations or this Interim Order are final and not subject to avoidance or recovery by the Debtor or any other entity under chapter 5 of the Bankruptcy Code or otherwise.

Section 7.    <u>Default; Rights and Remedies; Relief from Stay</u>.

7.1    <u>Events of Default</u>.    The occurrence and continuation of any of the following events, unless waived by the DIP Agent in its sole discretion, shall constitute an "***Event of Default***" under this Interim Order and the DIP Loan Documents, and the DIP Agent shall provide notice of any such Event of Default to the Debtors, the U.S. Trustee and lead counsel to the Committee (if a Committee has been appointed):

a.    the Debtors' failure to obtain entry of a Final Order within 30 days after the Petition Date;

b.    the Debtors' failure to timely achieve any of the Sale Milestones;

c.    a plan of reorganization or liquidation is proposed which does not provide for termination of the commitment under the DIP Facility and payment

in full of the DIP Obligations and the Prepetition Obligations in cash on the effective date of such plan;

        d.     any other superpriority administrative expense claim or lien senior to or *pari passu* with the DIP Obligations, the DIP Liens, the Adequate Protection Claim or the Adequate Protection Replacement Liens shall be granted, approved, imposed, or otherwise created;

        e.     any of the Debtors seeks to obtain additional financing under section 364(c) or 364(d) of the Bankruptcy Code or to grant any lien other than liens permitted under the DIP Credit Agreement without the prior written consent of the DIP Agent;

        f.     any Debtor files, or any representative of any Debtors' Estate files, any action challenging the validity, perfection, priority, extent, or enforceability of the DIP Loan Documents or the DIP Liens and claims granted thereunder;

        g.     any Debtor commences any action against any of the Prepetition Agent or the Prepetition Lenders with respect to the Prepetition Obligations including, without limitation, any action to avoid, modify, dispute, challenge, or subordinate any of the Prepetition Obligations or any Prepetition Liens, or entry of an order in any action by any other party granting such relief;

        h.     the entry of an order dismissing any of the Cases that does not provide for the termination of the commitment under the DIP Facility and payment in full of the DIP Obligations and Prepetition Obligations in cash prior to dismissal;

        i.     any Collateral becoming subject to surcharge or marshaling;

        j.     the entry of an order of the Court granting relief from the automatic stay with respect to any Collateral or assets of any Debtor that have an aggregate value equal to or exceeding $50,000;

k.     if any material contract of the Debtors is rejected or otherwise terminated (other than in accordance with its terms) or any material property of the Debtors is sold outside the ordinary course of business (other than pursuant to the Sale), in each instance, other than as expressly permitted under the terms of the DIP Credit Agreement, without the express written consent of the DIP Agent;

l.     any Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or their obligations under this Interim Order; or

m.     any other "Event of Default" as defined in and under the DIP Credit Agreement or any of the other DIP Loan Documents.

7.2     <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence and during the continuance of an Event of Default, (i) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents, (ii) the DIP Agent, on behalf of itself and the DIP Lenders, shall be entitled to take any act or exercise any right or remedy (subject to Section 7.4 below) as provided in this Interim Order or the DIP Loan Documents, including, without limitation, immediately suspending or immediately terminating the DIP Facility pending further order of the Court and (iii) the Debtors' right to use Cash Collateral shall thereupon immediately and without further action of any kind terminate pending further order of the Court; <u>provided</u>, <u>however</u>, that none of the foregoing shall restrict the payment of the Carve-Out Expenses or postpetition accrued and unpaid payroll expenses to the extent set forth in the Budget as of the date of such Event of Default.  The DIP Agent and the DIP Lenders shall have no obligation to lend or advance any additional funds to or on behalf of the Debtors, or provide any other financial accommodations to the Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default, except to fund the Carve-Out Expenses and postpetition accrued and unpaid payroll expenses to the extent set forth in the Budget as of the date of the Event of Default.

27

7.3    <u>Expiration of Commitment</u>.  Upon the earlier of (i) expiration of the Debtors' authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Interim Order and the DIP Loan Documents (except if such authority shall be extended with the prior written consent of the DIP Agent and the applicable (as provided in the DIP Loan Documents) DIP Lenders in their sole and absolute discretion, which consent shall not be implied or construed from any action, inaction or acquiescence by the DIP Agent or any DIP Lender) and (ii) the occurrence and continuance of an Event of Default which results in the delivery by the DIP Agent of an Enforcement Notice (as defined below), all of the DIP Obligations shall automatically become due and payable and the DIP Agent and the DIP Lenders shall be automatically and completely relieved from the effect of any stay under section 362 of the Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the Collateral or any other rights granted to the DIP Agent and the DIP Lenders pursuant to the terms and conditions of the DIP Loan Documents or this Interim Order, and the DIP Agent, acting on behalf of itself and the other DIP Lenders, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Interim Order, the DIP Loan Documents or applicable law which the DIP Agent may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtors' Estates following five (5) Business Days after delivery of an Enforcement Notice by the DIP Agent, unless an order of the Court is entered to the contrary.

7.4    <u>Relief from Automatic Stay</u>.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Agent, acting on behalf of itself and the DIP Lenders, to perform any act authorized or permitted under or by virtue of this Interim Order or the DIP Loan Documents, including, without limitation, (a) to implement the postpetition financing arrangements authorized by this Interim Order and pursuant to the terms of the DIP Loan Documents, and (b) to take any act to create, validate, evidence, attach or perfect any lien,

security interest, right or claim in the Collateral. In addition, and without limiting the foregoing, upon the occurrence and continuance of an Event of Default and after providing five (5) Business Days prior written notice to counsel for the Debtors, counsel for the Committee (if appointed) and the U.S. Trustee (the "**Enforcement Notice**"), the DIP Agent, acting on behalf of itself and the DIP Lenders, shall be entitled to take any action and exercise all rights and remedies provided to it by this Interim Order, the DIP Loan Documents or applicable law as the DIP Agent may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the Collateral or any other assets or properties of Debtors' Estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all DIP Obligations. The DIP Agent shall not object to the Debtors seeking a hearing before this Court on shortened notice during the five (5) Business Day period after an Enforcement Notice is delivered. For the avoidance of doubt, during the five (5) Business Day period referenced above, the DIP Agent and DIP Lenders shall have no obligation to make any additional advances under the DIP Loan Documents, except to fund the Carve-Out Expenses and postpetition accrued and unpaid payroll expenses to the extent set forth in the Budget as of the date of the Event of Default, and shall further be permitted to exercise control over the Debtors' cash and bank accounts (including the right to sweep and apply cash) in accordance with the DIP Loan Documents, subject to the foregoing exception.

Section 8.    Good Faith. The terms of this Interim Order were negotiated in good faith and at arm's length by and among the Debtors, the Prepetition Agent, the Prepetition Lenders, the DIP Agent, and the DIP Lenders. The DIP Agent and the DIP Lenders shall be entitled to the full protections of section 364(e) of the Bankruptcy Code.

Section 9.    Representations; Covenants; and Waivers.

      9.1    Objections to Prepetition Obligations. Any action, claim or defense (hereinafter, an "**Objection**") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, subordination, disgorgement,

cure, reinstatement or claim of any kind: (a) the existence, validity, nonavoidability, priority or amount of the Prepetition Obligations, or (b) the extent, legality, validity, priority, perfection, nonavoidability or enforceability of the Prepetition Liens, shall be filed with the Court (x) if a Committee is appointed by the U.S. Trustee, within sixty (60) days from the date of appointment of the Committee by the U.S. Trustee (but no later than seventy-five (75) days from the date of entry of this Interim Order), or (y) in the event no Committee is appointed, within seventy-five (75) days from the date of entry of this Interim Order; provided, however, that the deadlines set forth in clauses (x) and (y) may be extended, in writing, by the Prepetition Agent.  If any such Objection is timely filed, nothing in this Interim Order shall prevent the Court from granting appropriate relief with respect to the Prepetition Obligations or the Prepetition Liens in the Prepetition Collateral.  If no Objection is timely filed, or if an Objection is timely filed but denied, (a) the Prepetition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, avoidance, subordination, deduction, cure, reinstatement or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the Prepetition Liens in favor of the Prepetition Agent and the Prepetition Lenders in the Prepetition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable for all purposes and of first and senior priority, subject to only the Permitted Priority Liens, the Carve-Out Expenses, and the DIP Liens, and (b) the Prepetition Agent, the Prepetition Lenders and each of their agents, officers, directors, employees, attorneys, professionals, successors, and assigns, solely in their capacities as such, shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Prepetition Documents and shall not be subject to any further objection or challenge by any party at any time.

   9.2 <u>Debtors' Waivers</u>.  It shall be an immediate event of default under the DIP Facility if, at any time during the Cases, the Debtors seek authority to use Cash Collateral of the DIP Agent and the DIP Lenders under section 363 of the Bankruptcy Code without the written consent of the DIP Agent in its sole and absolute discretion; provided, however, that no such

consent shall be implied from any action, inaction, or acquiescence by the DIP Agent or any DIP Lender. At all times during the Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to (a) obtain postpetition loans or other financial accommodations pursuant to section 364 of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders or as may be otherwise expressly permitted pursuant to the DIP Loan Documents, (b) challenge the application of any payments authorized by this Interim Order, (c) propose, support or file a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all DIP Obligations and all Prepetition Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Credit Agreement, or (d) seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would directly restrict or impair the rights and remedies of the DIP Agent or the DIP Lenders under this Interim Order and the DIP Loan Documents or the DIP Agent's and the DIP Lenders' exercise of such rights or remedies; provided, however, that the DIP Agent, in its sole and absolute discretion, may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent or any DIP Lender.

9.3     Section 506(c) Claims. Subject to the entry of the Final Order, except to the extent of the Carve-Out Expenses, no costs or expenses of administration which have or may be incurred in the Cases at any time shall be charged against the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders, their respective claims or interests, the Collateral and/or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the DIP Agent and Prepetition Agent in their sole and absolute discretion, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent, any DIP Lender, the Prepetition Agent, or any Prepetition Lender.

9.4     Collateral Rights. Until all of the DIP Obligations shall have been indefeasibly paid and satisfied in full:

9.4.1  no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral; and

9.4.2  upon and after the occurrence of an Event of Default, and subject to the DIP Agent providing five (5) Business Days prior written notice as set forth in Section 7.4, above, the DIP Agent (or any of its employees, agents, consultants, contractors or other professionals), on behalf of itself and the DIP Lenders, shall have the right, at the sole cost and expense of Debtors, to: (a) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors, and (b) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are or were used by any of the Debtors.

Section 10.    Other Rights and Obligations.

10.1    No Modification or Stay of This Interim Order.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this Interim Order, any of the DIP Loan Documents or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or more of the Cases (each, a "*Subject Event*"), (i) the acts taken by the DIP Agent and the DIP Lenders in accordance with this Interim Order, and (ii) the DIP Obligations incurred or arising prior to the DIP Agent's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Interim Order, and the acts taken by the DIP Agent and the DIP Lenders in accordance with this Interim Order, and the liens granted to the DIP Agent and the DIP Lenders in the Collateral, and all other rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to this Interim Order and the DIP Loan Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.

32

10.2    Power to Waive Rights; Duties to Third Parties. The DIP Agent and the DIP Lenders, in their sole and absolute discretion, shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of the DIP Agent and the DIP Lenders (the "*DIP Lender Rights*"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s). Any waiver by the DIP Agent or any DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Agent or any DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert a defense to any obligation owed by the Debtors to the DIP Agent or any DIP Lender.

10.3    Setoff and Return of Goods. The Debtors shall not, without the consent of the DIP Agent in its sole and absolute discretion, (a) enter into any agreement to return any goods to any of their creditors for application against any prepetition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

10.4    Reservation of Rights. The terms, conditions, and provisions of this Interim Order are in addition to and without prejudice to the rights of the DIP Lenders and the DIP Agent, on behalf of itself and the DIP Lenders, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents, or any other applicable agreement or law, including, without limitation, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Debtors' Estates.

33

10.5    <u>Binding Effect of Interim Order</u>.

10.5.1 Immediately upon entry by this Court, this Interim Order shall be valid and binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the Debtors and the property of the Debtors' Estates, all other creditors of any of the Debtors, any Committee, and all other parties in interest and their respective successors and assigns (including any chapter 11 or chapter 7 trustee or any other fiduciary hereafter appointed as a legal representative of the Debtors), in any of the Cases, any successor cases, or upon dismissal of any Case or Successor Case.

10.5.2 Any order dismissing one or more of the Cases or any Successor Case under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim, the DIP Liens, the Prepetition Liens, the Adequate Protection Replacement Liens and the Adequate Protection Claim shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Prepetition Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction to the greatest extent permitted by applicable law, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim, the DIP Liens, the Prepetition Liens, the Adequate Protection Replacement Liens and the Adequate Protection Claim. In the event any Court modifies any of the provisions of this Interim Order or the DIP Loan Documents following a Final Hearing, (i) such modifications shall not affect the rights or priorities of the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders pursuant to this Interim Order with respect to the Collateral and/or Prepetition Collateral, or any portion of the DIP Obligations which arises or is incurred or is advanced prior to such modifications, and (ii) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

10.6    <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>. All postpetition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Loan Documents are made in reliance on this Interim Order and

there shall not at any time be entered in the Cases, or in any Successor Case, any order (other than the Final Order) which (a) authorizes the use of Cash Collateral of the Debtors in which the Prepetition Agent or the Prepetition Lenders have an interest, or the sale, lease, or other disposition of property of any Debtor's Estate subject to a lien or security interest granted to the Prepetition Agent for its benefit and the benefit of Prepetition Lenders, except as expressly permitted hereunder or in the DIP Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Agent, for its benefit and the benefit of the DIP Lenders, holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Agent, for its benefit and the benefit of the DIP Lenders, herein unless, in each instance (i) the DIP Agent shall have given its express prior written consent with respect thereto (such consent to be in the DIP Agent's absolute and sole discretion and no such consent being implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), or (ii) such other order requires that all DIP Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents, including, without limitation, all debts and obligations of the Debtors to the DIP Agent and the DIP Lenders which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to the DIP Agent. The security interests and liens granted to or for the benefit of the DIP Lenders hereunder and the rights of the DIP Agent and the DIP Lenders pursuant to this Interim Order shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors without the express prior written consent of the DIP Agent and the DIP Lenders  (such consent to be in the DIP Agent's and the DIP Lenders' absolute and sole discretion).

      10.7    No Owner/Operator Liability. In determining to make any loan under the DIP Credit Agreement or any Financing Order, or in exercising any rights or remedies as and when permitted pursuant to the DIP Credit Agreement or any Financing Order, none of the DIP

35

Agent or the DIP Lenders shall be deemed to be in control of the operations of any of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

10.8    Marshalling/552(b).    None of the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders shall be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral or the Prepetition Collateral. The DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and (subject to entry of a Final Order) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, the Prepetition Agent or Prepetition Lenders with respect to proceeds, products, offspring or profits of any of the Collateral and/or Prepetition Collateral.

10.9    Term; Termination.    Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among the Debtors, the DIP Agent, and the DIP Lenders authorized by this Interim Order may be terminated pursuant to the terms of the DIP Credit Agreement.

10.10    Objections Overruled.    All objections to the entry of this Interim Order are, to the extent not withdrawn or resolved, hereby overruled.

Section 11.    Findings and Conclusions.    This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable, as of the Petition Date, immediately upon execution hereof.    Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

36

Section 12.    <u>Interim Order Governs.</u>    In the event that any provision of this Interim Order conflicts with any term of the DIP Loan Documents, this Interim Order shall govern.

Section 13.    <u>No Prejudice.</u>    This Interim Order shall not prejudice, impair or adversely affect any of the Prepetition Agent's and the Prepetition Lenders' rights in connection with any of the Prepetition Loan Documents, except as specifically set forth herein.

Section 14.    <u>Retention of Jurisdiction.</u>    The Court has and will retain jurisdiction to interpret and enforce the provisions of this Interim Order.

Section 15.    <u>TZEW Holdco LLC.</u>    Notwithstanding anything herein to the contrary, TZEW Holdco LLC ("<u>TZEW Holdco</u>"), although a Debtor in these Cases, is not a party to the DIP Credit Agreement, and no Cash Collateral nor proceeds from the DIP Loans or amounts set forth in the Budget shall be borrowed or used by TZEW Holdco, or used by any Debtor or any other person for the benefit of TZEW Holdco.

Section 16.    <u>Final Hearing and Response Dates.</u>    The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for _____, 2020, at _____ (prevailing Eastern time) before this Court (the "*Final Hearing*"). *The Debtors shall promptly mail copies of this Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or Committee counsel, if same shall have filed a request for notice. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones, Fax: 302-652-4400; (b) counsel for the DIP Agent, KTBS Law LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, CA 90067, Attn: Michael L. Tuchin and David A. Fidler, Fax: 310-407-9090 and Young Conaway Stargatt & Taylor LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Robert J. Poppiti, Jr., Fax: 302-571-1253; (c) counsel to any Committee or if no Committee has been appointed, the 30 Largest Creditors; and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States*

37

*Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than _____, 2020, at _____ (prevailing Eastern time).*

Dated: _____, 2020
      Wilmington, Delaware

_____
    UNITED STATES BANKRUPTCY JUDGE

DOCS_SF:103065.10 04420/001

## EXHIBIT 1

**Initial DIP Budget**

**APEX PARKS GROUP**
**5 Week DIP Budget**

|  |  |  |  |  |  | 5 Week |
| --- | --- | --- | --- | --- | --- | --- |
| W/E: | 4/19/20 | 4/26/20 | 5/3/20 | 5/10/20 | 5/17/20 | Total |
| ($ in 000's) | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | |
| Receipts | - | - | - | - | 534 | 534 |
| **Operating Disbursements** | | | | | | |
| Payroll | 121 | 255 | 17 | 193 | 17 | 604 |
| Payroll Healthcare Premiums | 143 | 14 | - | - | 105 | 262 |
| Utilities | - | - | 29 | 56 | 29 | 114 |
| Rent & Property Taxes | 408 | 125 | 465 | - | - | 999 |
| Insurance Premiums | 31 | - | 207 | - | - | 238 |
| Misc Operating Expenses | 144 | 9 | 22 | 12 | 15 | 202 |
| Sales Tax | 20 | 30 | 50 | 42 | - | 142 |
| Other Operating Disbursements | 15 | 15 | 15 | 15 | 15 | 75 |
| Total Operating Disbursements | 882 | 449 | 805 | 318 | 181 | 2,635 |
| Cash Flow from Operations | (882) | (449) | (805) | (318) | 353 | (2,101) |
| **Non-Operating Disbursements** | | | | | | |
| Attraction Relocation Costs | 117 | - | - | - | - | 117 |
| Non-Operating Disbursements | 117 | - | - | - | - | 117 |
| **Restructuring Disbursements** | | | | | | |
| Utility Adequate Assurance Deposit | 87 | - | - | - | - | 87 |
| DIP Interest, Closing Fee & Unused Line Fee | 94 | - | 70 | - | 53 | 218 |
| Restructuring Professional Fees | 385 | 313 | 449 | 271 | 692 | 2,110 |
| Total Restructuring Disbursements | 566 | 313 | 519 | 271 | 745 | 2,415 |
| Total Disbursements | 1,566 | 762 | 1,325 | 589 | 926 | 5,167 |
| Net Cash Flow | (1,566) | (762) | (1,325) | (589) | (392) | (4,633) |
| **Cash On-Hand** | | | | | | |
| Beginning Cash | 361 | 545 | 534 | 459 | 341 | 361 |
| Net Cash Flow | (1,566) | (762) | (1,325) | (589) | (392) | (4,633) |
| Revolver Borrowings | 1,750 | 750 | 1,250 | 471 | 500 | 4,721 |
| Ending Cash | 545 | 534 | 459 | 341 | 449 | 449 |
| **Revolver Summary** | | | | | | |
| Beginning DIP Line Balance ($6.78M Rollup) | 6,779 | 8,529 | 9,279 | 10,529 | 11,000 | 6,779 |
| Line Draw (Repayment) | 1,750 | 750 | 1,250 | 471 | 500 | 4,721 |
| Ending Line Balance | 8,529 | 9,279 | 10,529 | 11,000 | 11,500 | 11,500 |

APEX PARKS GROUP
DIP Projections
Restructuring Professionals

| W/E: | 4/19/20 | 4/26/20 | 5/3/20 | 5/10/20 | 5/17/20 | Total |
|---|---|---|---|---|---|---|
| **Debtor** | | | | | | |
| Legal - PSZ&J | 100 | 100 | 80 | 60 | 60 | 400 |
| FA - Paladin | 80 | 80 | 80 | 80 | 80 | 400 |
| IB - Imperial Capital | - | - | 75 | - | 425 | 500 |
| RE - A&G | 5 | 5 | 5 | 5 | 5 | 25 |
| Claims Agent (Pro Fees) | 6 | 6 | 6 | 6 | 6 | 31 |
| **DIP Lender** | | | | | | - |
| Legal - KTBS | 69 | 69 | 69 | 69 | 69 | 344 |
| Legal - YCST | 13 | 13 | 13 | 13 | 13 | 63 |
| Consultant | 5 | 5 | 5 | 5 | 5 | 25 |
| Tax Consultant | - | - | 75 | - | - | 75 |
| **UCC** | | | | | | - |
| Legal - TBD | 8 | 8 | 8 | 8 | 8 | 38 |
| FA - TBD | 8 | 8 | 8 | 8 | 8 | 38 |
| **Other** | | | | | | - |
| U.S. Trustee | 16 | 8 | 13 | 6 | 2 | 44 |
| Claims Agent (Service) | 76 | 13 | 13 | 13 | 13 | 126 |
| **Total** | 385 | 313 | 449 | 271 | 692 | 2,110 |