# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TZEW HOLDCO LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 20-10910 (CSS)<br><br>Jointly Administered<br><br>**Requested Hearing Date:**<br>June 4, 2020 at 11:00 a.m. (ET)<br><br>**Requested Objection Deadline:**<br>June 3, 2020 at 4:00 p.m. (ET) |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR APPROVAL OF GLOBAL SETTLEMENT WITH THE LENDERS AND PURCHASER

The official committee of unsecured creditors (the "Committee") in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned proposed counsel, hereby moves the Court (this "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing and approving a Global Settlement (as hereinafter defined) by and among the Committee, the Purchaser, the DIP Agent, the DIP Lenders, the Senior Secured Agent and the Senior Secured Lenders (as the foregoing terms are hereinafter defined) and (ii) granting related relief. In support of this Motion, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Apex Parks Group, LLC (5579); Apex Real Property Holdings, LLC (1013); Speedzone Beverage Company, LLC (2339); Speedzone Holdings, LLC (7913); Speedzone Management, LLC (2937); TZEW Holdco LLC (0252); TZEW Intermediate Corp. (1058); and Apex Beverage and Concessions, LLC (5207). The location of the Debtors' service address in these chapter 11 cases is: 3405 Michelson Drive, Irvine, CA 92612.

**JURISDICTION**

1.  The United States Bankruptcy Court for the District of Delaware has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.  The statutory and legal predicates for the relief requested herein are Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

3.  Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Committee consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

**A.  General Background**

4.  The Debtors are a privately held owner-operator of amusement parks, resorts, and family entertainment centers across the country. Founded in 2014, the Debtors' business strategy focuses on the acquisition, operation, growth, and development of various properties into economical, family-friendly entertainment and amusement venues. The Debtors' locations include year-round family entertainment centers, water parks, and amusement parks in states across the country, including California, New Jersey, and Florida. Each of the Debtors' locations provides affordable, family-friendly entertainment to local markets and features numerous attractions, including rides, games, and events.

5. On April 8, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

6. Since the Petition Date, the Debtors have remained in possession of their assets and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On April 23, 2020, the Office of the United States Trustee for the District of Delaware appointed the following three members to the Committee: (i) STORE Master Funding VII, LLC; (ii) Stemmons Park, Ltd.; and (iii) Boca Raton Airport Authority.[2]

8. The Committee selected Kelley Drye as its lead counsel and Morris, Nichols, Arsht & Tunnell, LLP as Delaware counsel.

B.   **Prepetition and Postpetition Financing**

9. As of the Petition Date, the Debtors, the financial institutions parties thereto from time to time as lenders (the "Senior Secured Lenders"), and Cerberus Business Finance, LLC, as prepetition administrative agent and collateral agent (in such capacities and together with any successors thereto, the "Senior Secured Agent") are parties to that certain Financing Agreement dated as of September 18, 2014 (as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, the "Prepetition Credit Agreement" and together with the other Loan Documents (as defined in the Prepetition Credit Agreement), in each case as amended, amended and restated, supplemented or otherwise modified, refinanced or replaced prior to the Petition Date, collectively, the "Prepetition Loan Documents").

---

[2]   D.I. 98.

10. The Prepetition Loan Documents state that (a) the Debtors are obligated for principal, accrued and unpaid interest, fees, costs, expenses, indemnities, and other amounts arising under the Prepetition Loan Documents (the "Prepetition Obligations"), and (b) all of the Prepetition Obligations are secured by first priority liens granted to the Senior Secured Agent for its benefit and the benefit of the Senior Secured Lenders (the "Prepetition Liens") on substantially all of the property of the Debtors, as described and defined in the Prepetition Loan Documents (the "Prepetition Collateral").

11. On April 12, 2020, the Debtors filed the *Motion Seeking Entry of Interim and Final Orders (i) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (ii) Authorizing the Debtors to Use Cash Collateral; (iii) Granting Liens and Superpriority Administrative Expense Claims; (iv) Granting Adequate Protection to the Prepetition Lenders; (v) Modifying the Automatic Stay; (vi) Scheduling A Final Hearing; and (vii) Granting Related Relief* [D.I. 26] (the "DIP Motion").

12. By the DIP Motion, the Debtors sought entry of interim and final orders granting, among other things, authorization for the Debtors to enter into, be bound by, and perform under the debtor in possession credit facility (the "DIP Facility"), entitled "Senior Secured, Superpriority Debtor-in-Possession Credit Agreement", dated as of April 12, 2020, by and among the Debtors, Cerberus Business Finance, LLC, in its capacities as administrative agent and collateral agent (the "DIP Agent") and the lenders from time to time party thereto (the "DIP Lenders") (as it has been, and may be modified, supplemented, amended or restated from time to time, including pursuant to that certain *Amendment No. 1 to Senior Secured, Superpriority Debtor-in-Possession Credit Agreement and Related Waivers to Interim DIP*

4

*Order*, dated May 18, 2020, the "<u>DIP Credit Agreement</u>").[3]  The DIP Credit Agreement currently provides for a revolving commitment of up to $14.5 million.

    14.  On April 14, 2020, the Court entered an order approving the DIP Motion on an interim basis. *See* D.I. 59 (the "<u>Interim DIP Order</u>").  A final hearing on the DIP Motion is scheduled for June 4, 2020, at which time the Debtors will seek approval of a final order approving the DIP Motion (the "<u>Final DIP Order</u>").  The Interim DIP Order provided, among other things, for (i) stipulations by the Debtors regarding the validity, enforceability, perfection, and binding nature of the Prepetition Liens in the Prepetition Collateral and regarding the Prepetition Obligations, *see* Interim DIP Order at ¶ D(ii); and (ii) a "challenge period" (the "<u>Challenge Period</u>") for other parties to challenge the (a) the existence, validity, nonavoidability, priority or amount of the Prepetition Obligations, or (b) the extent, legality, validity, priority, perfection, nonavoidability or enforceability of the Prepetition Liens. *See id.* at ¶ 9.1.

**C.**  **<u>Sale of Substantially All of the Debtors' Assets</u>**

    14.  On April 12, 2020, the Debtors filed a motion (the "<u>Sale Motion</u>") seeking, among other things, entry of an order (the "<u>Sale Order</u>") approving: (a) the proposed sale (the "<u>Sale</u>") of substantially all of the assets (the "<u>Purchased Assets</u>") of the Debtors pursuant to the terms of that certain Asset Purchase Agreement, dated as of April 12, 2020 (including all exhibits and schedules related thereto), as amended by that certain First Amendment to Asset Purchase Agreement, dated as of May 7, 2020, and that certain Second Amendment to Asset Purchase Agreement, dated as of May 18, 2020 (the "<u>Stalking Horse APA</u>") with APX Operating

---

[3]  The Court entered an interim order approving the amendment on May 26, 2020. *See* D.I. 253.  A final hearing on approval of such amendment is also scheduled for June 4, 2020.

Company, LLC (f/k/a APX Acquisition Company LLC), a Delaware limited liability company (collectively with any nominee or designee thereof, the "Purchaser").[4]

15. On April 25, 2020, the Court entered an order [D.I. 115] (the "Bidding Procedures Order") approving certain bidding procedures (the "Bidding Procedures") to be employed by the Debtors in connection with the marketing of the Purchased Assets. In accordance with such Bidding Procedures, and after an auction having been commenced and thereafter conducted on May 11, 2020, the Debtors, in consultation with the Committee, identified the bid of the Purchaser as the only Qualifying Bid (as defined in the Bidding Procedures Order) and therefore the winning bidder. *See* D.I. 221.

16. A hearing to approve the Sale is scheduled for June 4, 2020.

## TERMS OF THE GLOBAL SETTLEMENT

17. Since its appointment, the Committee has engaged in good faith, arm's length negotiations with the Purchaser, the DIP Agent, the DIP Lenders, the Senior Secured Agent and the Senior Secured Lenders (collectively, with the Committee, the "Parties").

18. In order to avoid the cost of litigation to the Debtors' estates, the Parties have reached the terms of a global settlement (the "Global Settlement") pursuant to which the Committee has agreed to support entry of the Final DIP Order and the Sale Order, with certain modifications as discussed below. The terms of the Global Settlement are as follows:[5]

---

[4] Debtor TZEW Holdco LLC is not party to the Stalking Horse APA or the Debtors' prepetition or postpetition financing.

[5] The following is for summary purposes only, is not intended to be a full and complete recitation of the terms of the Global Settlement, and is qualified in its entirety by the terms of the settlement embodied in the Final DIP Order and the Sale Order, each of which shall control. A blackline of the Final DIP Order and Sale Order (changed pages only) reflecting the Global Settlement are attached hereto as **Exhibit B** and **Exhibit C**, respectively. For the avoidance of doubt, the Parties and the Debtors have made additional edits to the Final DIP Order that are not part of the Global Settlement and thus not reflected therein. The Debtors have separately filed a notice of revised Final DIP Order, reflecting all changes from the Interim DIP Order.

- Committee Carve-Out: The amount budgeted for the Committee's professionals shall be $550,000, inclusive of amounts previously paid or funded for the Committee's professionals (the "Committee Carve-Out"), which amount (to the extent not previously funded) shall be paid to a trust account held by the Committee's counsel, and, to the extent not exhausted by the Committee's professionals, shall be refunded to the Debtors and such excess amount shall not constitute DIP Collateral or Prepetition Collateral, shall not be subject to the Prepetition Liens, DIP Liens or Adequate Protection Replacement Liens, and neither the Superpriority Claim nor the Adequate Protection Claim shall have recourse to any such excess amount.

- The DIP Facility: The Total Revolving Credit Commitment (as defined in the DIP Facility) will be increased from the existing $14.5 limit to the extent necessary to provide for the Committee Carve-Out.

- The Challenge Period: The Committee has agreed that the Challenge Period shall be deemed to have expired upon entry of the Final DIP Order.

- Certain Claims and Causes of Action: Certain claims and causes of action have been excluded from the Purchased Assets, and will instead remain assets of the Debtors' estates, subject to a waterfall of any net proceeds of such excluded claims as between the Debtors' estates (but excluding any deficiency claim by the DIP Agent, DIP Lenders, Senior Secured Agent, or Senior Secured Lenders) and the Purchaser (in exchange for its agreement to exclude certain claims and for its agreement to pay an increased DIP Repayment Amount as part of the Global Settlement).

- Waiver of Avoidance Actions: The Purchaser has agreed not to assert those Avoidance Actions that are Purchased Assets.

- Credit Bid Amount: The Purchaser has amended the Stalking Horse APA to increase the "Credit Bid Amount," as defined in section 2.1 of the Stalking Horse APA, from $45,000,000 to $60,000,000.

- Release: The Parties have agreed that the Sale Order would contain a full and final release by the Debtors and their estates for the DIP Agent, the DIP Lenders, the Senior Secured Agent, the Senior Secured Lenders, and their respective Related Parties (as defined in the Stalking Horse APA).

**RELIEF REQUESTED**

19. By this Motion, the Committee requests the entry of an order (i) authorizing and approving entry into the Global Settlement and (ii) granting related relief.

**BASIS FOR RELIEF**

20.     Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See* 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *See* Fed. R. Bank. P. 9019(a).

21.     "The federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources." *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007); *see also, e.g.*, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27–28 (1994) (discussing the general utility of settlement vis-à-vis judicial economy). The force of this established federal policy is particularly acute in the bankruptcy context, where compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Indeed, in order to "minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. rev. 1993)); *see also In re Penn. Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990).

22.     The decision whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). In exercising that discretion, the Third Circuit Court of Appeals has stated that courts should

consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The proponent of a settlement is not required to demonstrate "that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'" *In re World Health*, 344 B.R. at 296 (internal citations and quotation marks omitted); *see also, e.g.*, *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (Sotomayor, J.) ("[I]n assessing the fairness of the settlement, a judge does not have to be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.").

23. The Committee, on behalf of the Debtors' estates, believes that the terms of the Global Settlement are fair and reasonable and that the best interests of the Debtors' estates are served by the entry of the Proposed Order and entry of the Final DIP Order and Sale Order, as modified, including by the revisions set forth therein. The terms of the Global Settlement are the product of good faith, arm's-length negotiations between the Parties and fall within the reasonable range of litigation possibilities.

24. The Global Settlement will result in the entry of the Final DIP Order and the Sale Order, which, importantly, will permit the Sale to occur and which will maximize value for the estates' stakeholders—including landlords, vendors, employees, and customers—in these Chapter 11 Cases. Critically, the Stalking Horse APA requires that, as a condition to the

Purchaser's obligation to close the Sale, "the DIP Agent, the DIP Lenders, the Senior Secured Agent and the Senior Secured Lenders and their respective Related Parties shall have received full and final releases from the [Debtors'] estates by virtue of the Sale Order, the Final Order (as defined in the DIP Financing Agreement) or otherwise." Stalking Horse APA at § 9.3(h). The Global Settlement provides for exactly that release and is necessary to permit the Sale to close. Absent approval of the Global Settlement and the associated release, the Challenge Period would remain open and the Sale would be unable to close, which could jeopardize the Sale in its entirety. In addition, absent approval of the Global Settlement, the Committee would likely object to entry of the Final DIP Order and the Sale Order, which would, at the very least, delay the Debtors' ability to consummate the Sale. In exchange for this benefit, the consideration given by the estates is more than fair—(i) a release by the estates of claims against the DIP Agent, DIP Lender, Senior Secured Agent and Senior Secured Lenders—which release, as discussed herein, is a condition to closing of the Stalking Horse APA anyway, and (ii) sharing of certain net proceeds of excluded claims with the Purchaser. The Committee, on behalf of the Debtors' estates, believes that the Global Settlement, as a whole, provides value to the estates, is far superior to the cost, risk, and delay of attempting to consummate the Sale absent the Global Settlement, and is in the best interests of all stakeholders.

25. Accordingly, the Committee respectfully submits that the Global Settlement is fair, reasonable, and in the best interests of the Debtors' estates and should therefore be approved under Bankruptcy Rule 9019 and Bankruptcy Code section 105(a).

### NOTICE

26. The Committee has provided notice of this Motion to: (i) the Debtors; (ii) the U.S. Trustee; (iii) the DIP Agent and Senior Secured Agent; and (iv) any party that has requested service pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court (i) enter the Proposed Order granting the relief requested herein and (ii) grant such other and further relief as may be just and proper under the circumstances.

Dated: May 28, 2020
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Joseph C. Barsalona II*
Curtis Miller (No. 4853)
Joseph C. Barsalona II (No. 6102)
Taylor Haga (No. 6549)
1201 N. Market St., 16th Floor
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email:  cmiller@mnat.com
              jbarsalona@mnat.com
              thaga@mnat.com

– and –

**KELLEY DRYE & WARREN LLP**
Eric R Wilson (admitted *pro hac vice*)
Jason R. Adams (admitted *pro hac vice*)
Lauren S. Schlussel (admitted *pro hac vice*)
Kayci G. Hines (admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email:  ewilson@kelleydrye.com
              jadams@kelleydrye.com
              lschlussel@kelleydrye.com
              khines@kelleydrye.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of TZEW Holdco LLC, et al.*