## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TZEW HOLDCO LLC, *et al.*,[1] | ) Case No. 20-10910 (CSS) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. 27** |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AMONG THE DEBTORS AND THE PURCHASER, (II) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(B), (F) AND (M), (III) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365, (IV) DETERMINING THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Seller") for entry of an order (this "Order") authorizing and approving: (a) the proposed sale (the "Sale") of substantially all of the assets (the "Purchased Assets") of the Debtors free and clear of all liens, claims, encumbrances, and interests (together, the "Encumbrances") pursuant to the terms of that certain asset purchase agreement, dated as of April 12, 2020 (including all exhibits and schedules related thereto), as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Apex Parks Group, LLC (5579); Apex Real Property Holdings, LLC (1013); Speedzone Beverage Company, LLC (2339); Speedzone Holdings, LLC (7913); Speedzone Management, LLC (2937); TZEW Holdco LLC (0252); and TZEW Intermediate Corp. (1058). The location of the Debtors' service address in these chapter 11 cases is: 18575 Jamboree Road, Suite 600, Irvine, CA 92612.

[2] Capitalized terms used in this Order but not immediately defined have the meanings given to such terms in the Motion or Stalking Horse APA, as applicable.

amended by that certain First Amendment to Asset Purchase Agreement, dated as of May 7,

2020, and that certain Second Amendment to Asset Purchase Agreement, dated as of May 18,

2020 (the "Stalking Horse APA"),[3] other than the Assumed Liabilities; (b) entry into the Stalking

Horse APA with APX Operating Company, LLC (f/k/a APX Acquisition Company LLC), a

Delaware limited liability company (collectively with any nominee or designee thereof, the

"Purchaser"), a copy of which is annexed hereto as Exhibit A; (c) assumption of those contracts

of the Debtors identified in the Stalking Horse APA (the "Assigned Contracts") and assignment

and sale of the Assigned Contracts to Purchaser, and (d) granting related relief, and the Court

having entered an order [Docket No. 115] (the "Bidding Procedures Order") approving the

bidding procedures (the "Bidding Procedures"); an Auction having been commenced and

thereafter conducted pursuant to the terms of the Bid Procedures Order on May 8 and May 11,

2020, the Debtors having identified the bid by Purchaser as the only Qualifying Bid, and

therefore the highest or otherwise best bid, for the Purchased Assets, and the Court having

conducted a hearing on the Motion commencing on June 4, 2020 (the "Sale Hearing") at which

time all interested parties were offered an opportunity to be heard with respect to the Motion; and

the Court having (a) reviewed and considered the Motion, all relief related thereto, any

objections thereto and statements of counsel and the evidence presented in support of the relief

requested by the Debtors in the Motion at the Sale Hearing, and (b) found that, after an

appropriate marketing process by the Debtors under the facts and circumstances of these cases,

Purchaser has submitted the highest or otherwise best bid for the Purchased Assets; and adequate

and sufficient notice of the Bidding Procedures, the Stalking Horse APA, and all transactions

contemplated thereunder and in this Order were given pursuant to and consistent with the

---

[3]    Debtor TZEW Holdco LLC is not party to the Stalking Horse APA.

Bidding Procedures Order; and reasonable and adequate notice of the Motion and Bidding Procedures Order having been provided to all persons required to be served in accordance with the Bankruptcy Code and the Local Rules for the United States Bankruptcy Court for the District of Delaware; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and jurisdiction existing for the Court to consider the Motion; and after due deliberation thereon; and upon the arguments and statements in support of the Motion presented at the Sale Hearing before the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor;

      **IT HEREBY IS FOUND AND DETERMINED THAT**:[4]

      A.    **<u>Jurisdiction and Venue.</u>**  This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

      B.    **<u>Statutory Predicates</u>**.  The statutory predicates for the relief sought in the Motion are sections 363(b), 363(f), and 365 and Bankruptcy Rules 2002, 6004, 6006(f), 6013, and 9014.

      C.    **<u>Final Order</u>**.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just

---

[4]   All findings of fact and conclusions of law announced by the Court at the Sale Hearing are hereby incorporated herein to the extent not inconsistent herewith.  In addition, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

       D.     **Notice.** Actual written notice of the Motion and the relief requested therein (including the assumption, assignment and sale of the Assigned Contracts to Purchaser or its designee and any Cure Amounts related thereto) was provided to the following parties (the "Notice Parties"): (a) counsel to Prepetition Agent, (b) the lender under any post-petition financing, (c) the Office of the U.S. Trustee for the District of Delaware, (d) counsel to any official committee appointed in these Chapter 11 Cases, (e) counsel to the Purchaser; (f) all parties to executory contracts and leases to be assumed, assigned and sold as part of the proposed Sale; (g) all parties who have expressed a written interest in some or all of the Purchased Assets; (h) all known holders of liens, encumbrances, and other claims secured by the Purchased Assets; (i) the Internal Revenue Service; (j) all applicable state and local taxing authorities; (k) the Federal Trade Commission; (l) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (m) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

       E.     Notice of the Motion, the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing objections to the Motion (the "Sale Notice") was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Auction, and the Sale Hearing.

       F.     As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Stalking Horse APA, Sale Hearing, Sale and transactions contemplated thereby, has been provided in accordance with the Bidding Procedures Order, Bankruptcy Code sections 363 and 365 and Bankruptcy Rules 2002, 6004,

178643.5

6006, 9007 and 9008.  The Debtors have complied with all obligations to provide notice of the

Motion as set forth in the Bidding Procedures Order.  The notices described above were good,

sufficient, and appropriate under the circumstances, and no other or further notice of the Motion,

Stalking Horse APA, Auction, or Sale Hearing is or shall be required.  The disclosures made by

the Debtors concerning the Motion, the Stalking Horse APA, the Auction, and Sale Hearing were

good, complete, and adequate.

      G.      **Compliance with Bidding Procedures Order.**  As demonstrated by evidence

proffered or adduced and the representations of counsel at the Sale Hearing, the Debtors have

conducted an adequate marketing process and a fair and open sale process in compliance with

the Bidding Procedures Order.  The Bidding Procedures were substantively and procedurally fair

to all parties, were the result of arm's length negotiations, and afforded a full, fair, and

reasonable opportunity for any interested party to make a higher or otherwise better offer to

purchase the Purchased Assets.  The Bidding Procedures and the Bidding Procedures Order have

been complied with in all material respects by the Debtors and the Purchaser.

      H.      In accordance with the Bidding Procedures Order, the Debtors have served a

notice of the potential assumption, assignment and sale of the Assigned Contracts, which cure

notice [Docket No. 117] (together with the supplemental notices at Docket Nos. 130 & 254, the

"Cure Notice") identifies all defaults and actual pecuniary loss to the non-Debtor party resulting

from such defaults including, but not limited to, all claims, demands, charges, rights to refunds,

and monetary and non-monetary obligations that the non-Debtor parties can assert under the

Assigned Contracts whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money

now owing or owing in the future, arising under or out of, in connection with, or in any way

178643.5

relating to the Assigned Contracts (the foregoing amounts as stated in the Cure Notice, collectively referred to as the "Cure Amounts") upon each non-Debtor counterparty to an Assigned Contract.  The service and provision of the Cure Notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption, assignment and sale of the Assigned Contracts or establishing a Cure Amount for the respective Assigned Contract.  Non-Debtor counterparties to the Assigned Contracts have had an adequate opportunity to object to assumption, assignment and sale of the applicable Assigned Contract and the Cure Amount set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline to file an objection to the stated Cure Amounts (a "Cure Objection") has expired and to the extent any such party timely filed a Cure Objection, all such Cure Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties.  To the extent that any such party did not timely file a Cure Objection by May 4, 2020 (the "Cure Objection Deadline"), such party shall be deemed to have consented to (i) the assumption, assignment and sale of the Assigned Contract and (ii) the proposed Cure Amount set forth on the Cure Notice.

I.    **Corporate Authority.**  (i) The Debtors have full corporate power and authority to execute the Stalking Horse APA and all other documents contemplated thereby and the Debtors' sale of the Purchased Assets has been duly and validly authorized by all necessary corporate actions, (ii) the Debtors have all of the corporate power and authority necessary to consummate the transactions contemplated by the Stalking Horse APA, (iii) the Debtors have taken all

6

corporate actions necessary to authorize and approve the Stalking Horse APA and the

consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other

than those expressly provided for in the Stalking Horse APA, are required for the Debtors to

consummate such transactions.

      J.      The Stalking Horse APA was not entered into for the purpose of hindering,

delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United

States, any state, territory, possession, or the District of Columbia. Neither the Debtors nor the

Purchaser is entering into the transactions contemplated by the Stalking Horse APA fraudulently

for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer

claims.

      K.      The Debtors are the sole and lawful owner of the Purchased Assets. Subject to

sections 363(f) and 365(a) of the Bankruptcy Code, the transfer of each of the Purchased Assets

to Purchaser, in accordance with the Stalking Horse APA will be, as of the Closing Date, a legal,

valid, and effective transfer of the Purchased Assets, which transfer vests or will vest Purchaser

with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all

Encumbrances to the fullest extent permitted by applicable law. Encumbrances shall include, but

not be limited to, all debts arising under, relating to, or in connection with any act of the Debtors,

or claims liabilities, obligations, demands, guaranties, options, rights, contractual commitments,

restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat

obligations, interests and matters of any kind and nature, whether arising prior to or subsequent

to the commencement of these cases, and whether imposed by agreement, applicable law, equity

or otherwise (including, without limitation, rights with respect to claims and Encumbrances (i)

that purport to give to any party a right of setoff or recoupment against, or a right or option to

effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or Purchaser's interests in the Purchased Assets, or any similar rights, (ii) in respect of taxes owed by the Debtors for periods prior to the Closing Date, including, but not limited to, sales, income, use or any other type of tax; or (iii) in respect of restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) relating to, accruing or arising any time prior to the Closing Date, with the exception of the Assumed Liabilities.

L.    **Sale in Best Interests of the Debtors' Estates**.  Good and sufficient reasons for approval of the Stalking Horse APA and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to Bankruptcy Code section 363(b), outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to Purchaser is necessary and appropriate to maximize the value of the Debtors' estates.

M.    The Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses and to maximize the value of the Debtors' estates.  Time is of the essence in consummating the Sale.  Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

178643.5

N.      The consummation of the Sale and the assumption, assignment and sale of the

Assigned Contracts are legal, valid, and properly authorized under all applicable provisions of

the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b),

363(f), 363(m), and 365, and all of the applicable requirements of such sections have been

complied with in respect of the transaction.

O.      **Good Faith of Purchaser and Seller**.  The Stalking Horse APA was negotiated,

proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and

from arm's-length bargaining positions, and is substantively and procedurally fair to all parties.

The Purchaser is not an "insider" of any of the Debtors, as that term is defined in Bankruptcy

Code section 101(31).  Neither any of the Debtors, nor the Purchaser has engaged in any conduct

that would cause or permit the Stalking Horse APA to be avoided under Bankruptcy Code

section 363(n).  Specifically, the Purchaser has not acted in a collusive manner with any person

and the Purchase Price was not controlled by any agreement among bidders.  Purchaser is

purchasing the Purchased Assets, in accordance with the Stalking Horse APA, in good faith and

is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is

therefore entitled to all of the protections afforded by such provision, and otherwise has

proceeded in good faith in all respects in connection with the Debtors' chapter 11 cases.  As

demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing

and (ii) the representations of counsel made on the record at the Sale Hearing, appropriate

marketing efforts and a competitive sale process were conducted in accordance with the Bidding

Procedures Order and, among other things:  (a) the Debtors and Purchaser complied with the

provisions in the Bidding Procedures Order; (b) Purchaser agreed to subject its Bid to the

competitive bidding procedures set forth in the Bidding Procedures Order; (c) Purchaser in no

way induced or caused the chapter 11 filing by the Debtors; and (d) all payments to be made by Purchaser in connection with the Sale have been disclosed.

P.    **Highest or Otherwise Best Offer.**    The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order.  The procedures established in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The Bidding Procedures and the opportunity to submit a higher or otherwise better bid were duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Purchased Assets.  The Stalking Horse APA constitutes the highest or otherwise best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Stalking Horse APA constitutes the highest or otherwise best offer for the Purchased Assets is a valid and sound exercise of their fiduciary duties and constitutes a valid and sound exercise of the Debtors' business judgment.

Q.    **Consideration**.    The consideration provided by Purchaser pursuant to the Stalking Horse APA (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Purchased Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formally the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estate than Purchaser.  Approval of

10

the Motion, the Stalking Horse APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

R.    **Legal, Valid, and Binding Transfer.**   The Purchased Assets are property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of Section 541(a) of the Bankruptcy Code.   The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and, except as provided in the Stalking Horse APA or this Order, will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all liens, claims, interests, and encumbrances, unless specifically assumed by the Purchaser pursuant to the Stalking Horse APA.   The Stalking Horse APA is a valid and binding contract between the Debtors and the Purchaser and shall be enforceable according to its terms.

S.    **No Successor**.   The transactions contemplated under the Stalking Horse APA do not amount to a consolidation, merger, or de facto merger of Purchaser and the Debtors and/or the Debtors' estates; there is not substantial continuity between Purchaser and the Debtors; there is no continuity of enterprise between the Debtors and Purchaser; Purchaser is not a mere continuation of the Debtors or their estates; and Purchaser is not, and shall not be considered, a successor-in-interest of the Debtors or their estates for any purpose, including but not limited to under any federal, state, or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine or common law, or under any product warranty liability law or

11

178643.5

doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine and Purchaser and its affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 et seq., or the Comprehensive Environmental Response Compensation and Liability Act, and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act and/or the Fair Labor Standards Act.  Except for the Assumed Liabilities, the (i) transfer of the Purchased Assets to Purchaser and (ii) assumption, assignment and sale to Purchaser of the Assigned Contracts do not and will not subject Purchaser to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

     T.    **Free and Clear.**  The conditions of Bankruptcy Code section 363(f) have been satisfied in full; therefore, the Debtors may sell the Purchased Assets free and clear of any Encumbrances in the property, other than the Assumed Liabilities, to the fullest extent permitted by applicable law.  Purchaser would not have entered into the Stalking Horse APA and would not consummate the transactions contemplated thereby if the Sale to Purchaser was not free and

clear of all Encumbrances other than the Assumed Liabilities. The Debtors may sell the

Purchased Assets free and clear of any Encumbrances of any kind or nature whatsoever because

in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy

Code has been satisfied. Each entity with an Encumbrances of any kind on the Purchased Assets

to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Order,

consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a

legal or equitable proceeding to accept money satisfaction of such Encumbrances; or (iii)

otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of

Encumbrances who did not object to the Motion are deemed, subject to the terms of this Order,

to have consented pursuant to Bankruptcy Code section 363(f)(2). All holders of Encumbrances

are adequately protected by having their Encumbrances attach to any cash proceeds received by

the Debtors that are ultimately attributable to the property against or in which such

Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity,

force, and effect, and in the same order of priority, which such Encumbrances now have against

the Purchased Assets or their proceeds, if any, subject to any rights, claims, and defenses the

Debtors or their estates, as applicable, may possess with respect thereto.

U.     **Not a *Sub Rosa* Plan.** The Stalking Horse APA and Sale do not constitute an

impermissible *sub rosa* chapter 11 plan for which approval has been sought without the

protections that a disclosure statement would afford.

V.     **Cure/Adequate Assurance.** Notice of the Debtors' assumption, assignment and

sale to the Purchaser of the Assigned Contracts has been provided to each non-Debtor

counterparty to an Assigned Contract, together with the Cure Amounts, if any, to be paid to such

non-Debtor counterparty to cure any defaults under, and to otherwise comply with the

13

requirements of Section 365(b) of the Bankruptcy Code with respect to each Assigned Contract. As to each Assigned Contract, payment of the Cure Amounts set forth on **Exhibit B** hereto (or such other Cure Amounts as agreed, in writing, by the Debtors, the Purchaser and the counterparty to the applicable Assigned Contract or ordered by this Court) is sufficient for the Debtors to comply fully with the requirements of Section 365(b) of the Bankruptcy Code.  In addition, the Purchaser has provided adequate assurance of its ability to perform its obligations under each of the Assigned Contracts within the meaning of Section 365 of the Bankruptcy Code.  All other requirements and conditions under the Bankruptcy Code for the assumption by the Debtors and assignment and sale to the Purchaser of the Assigned Contracts have been satisfied.  Therefore, subject to the terms of this Order, the Assigned Contracts may be assumed by the Debtors and assigned and sold to the Purchaser.

W.    **Liquor Licenses.** The Debtors currently hold or have been issued liquor, wine, and beer licenses (collectively, the "Liquor Licenses") that remain in effect authorizing the respective licensees to conduct retail sales of alcoholic beverages. The Court finds that it is in the best interests of the Debtors, their estates and creditors, and other parties in interest for said sales to continue uninterrupted during the transition of ownership from the Debtors to the Purchaser following the Sale, subject to reasonable and good faith efforts to timely transfer existing Liquor Licenses or to apply for new Liquor Licenses equivalent to any Liquor Licenses that are not subject to transfer. Nothing in this Order or the Stalking Horse APA nullifies, precludes, or enjoins any governmental unit that issues or regulates Liquor Licenses from enforcement of its valid police or regulatory powers in connection with the Purchased Assets.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT**:

1.    The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

14

2.      Any objections filed or asserted in response to the Motion and the relief granted

herein, to the extent not resolved as set forth herein or on the record at the Sale Hearing, are

hereby overruled on the merits in their entirety, except to the extent that such objection is on

account of a Cure Amount that is presently subject to the cure resolution process and is listed on

**Exhibit C** hereto.

3.      The Stalking Horse APA, and all other ancillary documents, and all of the terms

and conditions thereof, are hereby approved in all respects.

4.      Pursuant to Bankruptcy Code sections 363(b) and 363(f), the Debtors are hereby

authorized to (a) execute any additional instruments or documents that may be reasonably

necessary or appropriate to implement the Stalking Horse APA, *provided* that such additional

documents do not materially change its terms adversely to the Debtors' estates; (b) consummate

the Sale in accordance with the terms and conditions of the Stalking Horse APA and the

instruments to the Stalking Horse APA contemplated thereby; and (c) execute and deliver,

perform under, consummate, implement, and close fully the transactions contemplated by the

Stalking Horse APA, including the assumption, assignment and sale to the Purchaser (in

accordance with the Stalking Horse APA) of the Assigned Contracts, together with all additional

instruments and documents that may be reasonably necessary or desirable to implement the

Stalking Horse APA and the Sale.  Purchaser shall not be required to seek or obtain relief from

the automatic stay under Bankruptcy Code section 362 to enforce any of its remedies under the

Stalking Horse APA or any other Sale-related document.  The automatic stay imposed by

Bankruptcy Code section 362 is modified solely to the extent necessary to implement the

preceding sentence and the other provisions of this Order, *provided, however*, that this Court

shall retain exclusive jurisdiction over any and all disputes with respect thereto.

178643.5

5.     This Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Encumbrances or other interests in, against, or on all or any portion of the Purchased Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, the Purchased Assets, and any trustees subsequently appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.  This Order and the Stalking Horse APA shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

6.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

7.     **Transfer of Purchased Assets Free and Clear of Encumbrances**.  Pursuant to Bankruptcy Code sections 105(a), 363(b) and 363(f), the Debtors are authorized to transfer the Purchased Assets to the Purchaser in accordance with the Stalking Horse APA and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest Purchaser with title in and to the Purchased Assets and, other than the Assumed Liabilities, the Purchaser shall take title to and possession of the Purchased Assets free and clear of all Encumbrances and other interests of any kind or nature whatsoever, including but not limited to successor or successor-in-interest liability and claims in respect of the Excluded Liabilities, with all such Encumbrances and other interests to attach to any cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Purchased Assets

16

or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

8.     Unless otherwise expressly included in the definition of "Assumed Liabilities" in the Stalking Horse APA, Purchaser shall not be responsible for any Encumbrances, including, but not limited to, in respect of the following: (a) any labor or employment agreements; (b) any mortgages, deeds of trust, and security interests; (c) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (d) any other employee, worker's compensation, occupational disease, unemployment, or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the WARN Act, (vii) the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act, (ix) the Family Medical Leave Act, (x) the Labor Management Relations Act, (xi) the Multiemployer Pension Protection Act, (xii) the Pension Protection Act, (xiii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (xiv) the Comprehensive Environmental Response Compensation and Liability Act, (xv) state discrimination laws, (xvi) state unemployment compensation laws or any other similar state laws, or (xvii) any other state or federal benefits or claims relating to any employment with the Debtors or any of its respective predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, or any state or local tax laws; (g) any escheat or unclaimed property laws; (h) to the extent not included in the foregoing,

17

any of the Excluded Liabilities under the Stalking Horse APA; and (i) any theories of successor or transferee liability.

9.      On the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Encumbrances or other interests in the Purchased Assets, if any, as such Encumbrances may have been recorded or may otherwise exist.

10.     If any person or entity which has filed statements or other documents or agreements evidencing Encumbrances on, against, or in, all or any portion of the Purchased Assets (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances of any kind or other interests which the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Debtors are hereby authorized, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets.

11.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to Purchaser of the Debtors' interests in the Purchased Assets.  This Order is and shall be effective as a determination that, on the Closing Date, all Encumbrances or other interest of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date, other than the Assumed Liabilities, shall have been unconditionally released, discharged, and terminated to the fullest extent permitted by applicable law, and that the conveyances described herein have been

18

effected.  This Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA.  A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances and other interests of record except those assumed as Assumed Liabilities.

12.      All entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed (wherever located) to the Purchaser pursuant to the Stalking Horse APA are hereby directed to surrender possession of the Purchased Assets to the Purchaser on the Closing Date.

13.      **Certain Claims and Causes of Action**.  Notwithstanding anything in the Stalking Horse APA to the contrary, (a) the Purchased Assets shall not include (i) Avoidance Actions unless they relate to the Purchaser's operation of the Business from and after the Closing Date or (ii) claims or causes of action (including Avoidance Actions) against any Insider (as defined in section 101(31)(B) of the Bankruptcy Code) unless such Insider is retained by Purchaser on or within sixty (60) days following the Closing Date, and (b) Purchaser shall not prosecute or assert, and agrees to waive, all Avoidance Actions that are Purchased Assets.

178643.5

14.    Any proceeds realized by the Debtors' estates with respect to Avoidance Actions or claims against Insiders that are not Purchased Assets (the "Excluded Claims") that remain following payment of fees and expenses incurred in pursuing such claims (the "Net Proceeds") shall be distributed as follows: (i) the first $500,000 shall be distributed to the Debtors' estates free and clear of any liens and claims of Purchaser or its affiliates (including the DIP Agent and the Senior Secured Agent); (ii) the next $1.5 million of Net Proceeds shall be allocated, on a pro rata basis, 66.7% to the Purchaser in exchange for its agreement to exclude the Excluded Claims from the Purchased Assets and in exchange for its agreement to pay an increased DIP Repayment Amount (as part of the settlement with the Official Committee of Unsecured Creditors for the benefit of the estates), and 33.3% to the Debtors' estates free and clear of any liens and claims of the Purchaser or its affiliates (including the DIP Agent and the Senior Secured Agent); and (iii) any remaining Net Proceeds shall be allocated pro rata 50% to the Purchaser (in exchange for the items listed in subclause (ii)) and 50% to the Debtors' estates free and clear of any liens and claims of the Purchaser or its affiliates (including the DIP Agent and the Senior Secured Agent).  For the avoidance of doubt, neither the DIP Agent nor the Senior Secured Agent shall share in any proceeds distributed to the Debtors' estates in accordance with this paragraph 14 on account of any deficiency claim under that certain Financing Agreement dated as of September 18, 2014.

15.    Purchaser has agreed to amend the Stalking Horse APA to increase the Credit Bid Amount, as defined in section 2.1 of the Stalking Horse APA, from $45,000,000 to $60,000,000, which amendment is hereby approved, and any reference in such section 2.1 to "$45,000,000" shall be amended to instead read "$60,000,000".

178643.5

16.     The DIP Agent, the DIP Lenders, the Senior Secured Agent and the Senior Secured Lenders and their respective Related Parties (as such terms are defined in the Stalking Horse APA) are hereby fully and finally released by the Debtors and their estates from any and all claims and causes of action (including any action, claim or defense that seeks to challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, subordination, disgorgement, cure, reinstatement or claim of any kind: (a) the existence, validity, nonavoidability, priority or amount of any obligations owed to DIP Agent, the DIP Lenders, the Senior Secured Agent and the Senior Secured Lenders and their respective Related Parties, or (b) the extent, legality, validity, priority, perfection, nonavoidability or enforceability of any of the liens held by DIP Agent, the DIP Lenders, the Senior Secured Agent and the Senior Secured Lenders and their respective Related Parties) except to the extent permitted under section 11.16 of the Stalking Horse APA.

17.     **Prohibition of Actions Against Purchaser**.  Except for the Assumed Liabilities (which, for the avoidance of doubt, include the item listed in clause (i) of paragraph 28), Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets or other Assumed Liabilities expressly identified in the Stalking Horse APA, including, but not limited to, any liability for any liabilities whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date.

18.     Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Order or the Stalking Horse APA, all persons and entities, including, but not

21

limited to, all debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Purchased Assets to the Purchaser in accordance with the Stalking Horse APA, hereby are forever barred, estopped, and permanently enjoined from asserting against Purchaser, its successors or assigns, its property, or the Purchased Assets, such persons' or entities' Encumbrances in and to the Purchased Assets, including, without limitation, the following actions:  (a) commencing or continuing in any manner any action or other proceeding against Purchaser, its successors, assets, or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Encumbrances of any kind whatsoever or any other interest against Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

178643.5

19.    To the greatest extent available under applicable law, Purchaser shall be authorized, as of the Closing Date, to operate under any license (including any Liquor License), permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets to the extent transferred in the Stalking Horse APA, and all such licenses (including Liquor Licenses), permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Purchaser as of the Closing Date.  To the extent provided by section 525 of the Bankruptcy Code, no Governmental Unit may revoke or suspend any grant, permit, or license (including any Liquor License) relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Purchaser or its Affiliates on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale. Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale set forth in the Stalking Horse APA.

20.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to Purchaser in accordance with the terms of the Stalking Horse APA, and this Order.

21.    The Purchaser has given substantial consideration under the Stalking Horse APA for the benefit of the Debtors, their estates, and creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Order which releases shall be deemed to have been given in favor of Purchaser by all holders of Encumbrances of any kind whatsoever against any of the Debtors or any of the Purchased Assets, other than with respect to the Assumed Liabilities.  The

178643.5

consideration provided by Purchaser for the Purchased Assets under the Stalking Horse APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

22.     After the Closing, the Debtors and their estates shall have no liabilities or obligations with respect to any portion of the Senior Secured Obligations that become Restructured Indebtedness in accordance with Section 2.1 of the Stalking Horse APA, if any, and all holders of such portion of the Senior Secured Obligations, if any, are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property, or their assets or estates related solely to the extent related to such portion of the Senior Secured Indebtedness.

23.     Notwithstanding the foregoing, nothing herein shall prevent (a) solely to the extent permitted by section 11.16 of the Stalking Horse APA, the Debtors from pursuing an action against the Purchaser arising under the Stalking Horse APA or the related documents, or (b) any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state, and local officials from properly exercising their police and regulatory powers.

24.     **Assumption, Assignment and Sale of Contracts**.  The Debtors are hereby authorized, in accordance with Bankruptcy Code sections 105(a), 363 and 365, to (a) assume, assign and sell to Purchaser, in accordance with the Stalking Horse APA, effective upon the Closing Date, the Assigned Contracts free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities) and (b) execute and deliver to Purchaser such documents or other instruments as Purchaser deems may be necessary to assign and transfer the Assigned Contracts and the Assumed Liabilities to Purchaser in accordance with the Stalking Horse APA.

178643.5

25.    The Purchaser has provided adequate assurance of future performance under the Assumed Contracts within the meaning of Section 365 of the Bankruptcy Code.

26.    Effective as of the Closing Date, the Assigned Contracts shall be assumed by the Debtors and assigned and sold to the Purchaser, notwithstanding any provision in any such Assigned Contract (including those of the type described in Bankruptcy Code sections 365(b)(2) and (f)) that prohibits, restricts, or conditions such assignment or transfer, and following the Closing Date shall remain in full force and effect for the benefit of the Purchaser, in accordance with the Stalking Horse APA, and, pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by Purchaser in accordance with the Stalking Horse APA; and upon the Closing Date, in accordance with Bankruptcy Code sections 363 and 365, Purchaser shall be fully and irrevocably vested in all rights, title, and interest of each Assigned Contract.

27.    All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2)) shall be cured on the Closing Date or as soon thereafter as practicable by payment of the Cure Amounts by the Debtors.  To the extent that any counterparty to an Assigned Contract did not object to its Cure Amount by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Amount and the assumption, assignment and sale of its respective Assigned Contract(s) to the Purchaser in accordance with the Stalking Horse APA.  The Purchaser shall have no liability arising or accruing under the Assigned Contracts on or prior to the Closing, except as otherwise expressly provided in the Stalking Horse APA or this Order.  The non-Debtor counterparties to the Assigned Contracts are barred from asserting against the Debtors, their estates, the Purchaser,

25

and their respective successors and assigns, any default or unpaid obligation allegedly arising or

occurring before the Closing, any pecuniary loss resulting from such default, or any other

obligation under the Assigned Contracts arising or incurred prior to the Closing, other than the

Cure Amounts set forth on **Exhibit B** hereto.

28.    Unless otherwise represented by the Debtors in a separate pleading, in open court

at the Sale Hearing, or pursuant to a contract or lease amendment entered into by the Debtors,

Purchaser, and the appropriate contract or lessor counterparty (any such amendment being

deemed approved by this Order), the Cure Notice reflects the sole amounts necessary under

Bankruptcy Code section 365(b) to cure all monetary defaults under the Assigned Contracts, and

no other amounts are or shall be due in connection with the assumption by the Debtors and the

assignment and sale to Purchaser of the Assigned Contracts in accordance with the Stalking

Horse APA; provided, however, that unless a contract or lease counterparty has otherwise

agreed, with respect to any Assigned Contract, and solely to the extent provided for in or in

connection with an Assigned Contract, (i) the Purchaser shall remain responsible for accrued and

accruing year-end adjustments that become due after Closing regardless of whether those

amounts accrued prior to or after Closing; (ii) any security deposit shall continue to be

maintained by the counterparty in accordance with the terms of such Assigned Contract, and

Purchaser and the counterparty reserve their respective rights with respect thereto; and (iii) any

third-party non-Debtor guaranty relating to an Assigned Contract shall continue in force and

effect.

29.    Upon the Debtors' assignment and sale of the Assigned Contracts to Purchaser

under the provisions of this Order and any additional orders of this Court and payment of any

Cure Amounts by the Debtors, no default shall exist under any Assigned Contract, and no

178643.5

counterparty to any Assigned Contract shall be permitted (a) to declare a default by Purchaser under such Assigned Contract or (b) otherwise take action against Purchaser as a result of Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under the relevant Assigned Contract.  Each non-Debtor party to an Assigned Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Purchaser, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities or, against Purchaser, any counterclaim, defense, setoff, recoupment or any other claim asserted or assertable against the Debtors; and (ii) imposing or charging against Purchaser any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption, assignment and sale to Purchaser of any Assigned Contract in accordance with the Stalking Horse APA.  The validity of such assumption, assignment and sale of each Assigned Contract shall not be affected by any dispute between the Debtors and any non-Debtors party to an Assigned Contract.

30.     Except as provided in the Stalking Horse APA or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Encumbrances of any kind whatsoever are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property, or their assets or estates; provided, however, non-Debtor counterparties to Assigned Contracts do not waive any claims against the Debtors to the extent that such claims are covered by indemnity obligations owed by non-Debtor third parties; provided, further that non-Debtor counterparties to Assigned Contracts may only pursue such indemnity claims against available insurance maintained by the Debtors (if any), and only to the extent of available

27

insurance proceeds.  The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Assigned Contracts.

31.     Notwithstanding anything to the contrary in this Order or the Cure Notice, with respect to the Assigned Contracts set forth on **Exhibit C** hereto, for which the non-Debtor counterparties thereto filed timely Cure Objections which have not been resolved as of the entry of this Order (collectively, the "Adjourned Cure Costs Objections"), the Cure Amounts (collectively, the "Adjourned Cure Amounts") and the Adjourned Cure Costs Objections are adjourned, and the Adjourned Cure Amounts shall be fixed at the amounts agreed to in writing by the Debtors (subject to the consent of the Purchaser) and such counterparties, or if no such agreement is reached, fixed at the amounts ordered by this Court after a hearing on a date and at a time determined by the Debtors (or otherwise scheduled by this Court).  Pending the parties' consensual resolution of the Adjourned Cure Amounts or the Court's adjudication of such amounts:  (i) the related Assigned Contracts may be (but are not required to be) assumed by the Debtors and assigned and sold to the Purchaser, provided that the Purchaser segregates the Cure Amounts the counterparties assert in the Adjourned Cure Costs Objections are required to be paid (or such lower amounts as agreed to by the Purchaser and the counterparties); and (ii) the Purchaser may elect to re-designate such Assigned Contracts as Non-Assigned Contracts.  Upon the Adjourned Cure Amounts becoming fixed as provided for in this Paragraph:  (a) such fixed amounts shall be the "Cure Amounts" for the Assigned Contracts for all purposes under this Order; (b) the Purchaser may elect to re-designate the related Assigned Contracts as Non-Assigned Contracts; and (c) if such Assigned Contracts are not so re-designated and were not

28

previously assumed by the Debtors and assigned and sold to the Purchaser, such Assigned

Contracts shall be promptly assumed by the Debtors and assigned and sold to the Purchaser.

32.    Notwithstanding anything herein to the contrary, and subject to the Stalking Horse

APA, until one Business Day prior to the Closing Date, Purchaser may remove any contract or

lease from the list of Assigned Contracts (and thereby exclude such Contract from the definition

of Assigned Contracts) pursuant to the procedures set forth in the Stalking Horse APA.  The

Debtors shall file a schedule of the final Assigned Contracts reasonably promptly after the

Closing Date.

33.    **No Successor Liability.**        The Purchaser and its successors and assigns shall

not be deemed, as a result of any action taken in connection with the transfer of the Purchased

Assets, (i) to be a successor to the Debtors or their estates, (ii) to have, de facto or otherwise,

merged or consolidated with or into the Debtors or their estates, (iii) to be a continuation or

substantial continuation of the Debtors or any enterprise of the Debtors, (iv) to have a common

identity with the Debtors; (v) to have acquired the trade or business of any of the Debtors for any

purpose under applicable U.S. federal law (including the Bankruptcy Code and the Internal

Revenue Code of 1986, as amended), or (vi) to be held out to the public as a continuation of the

Debtors or the Debtors' trade or business, and the Purchaser shall have no successor, transferee,

or vicarious liability of any kind or character, including, but not limited to, under any theory of

foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or

transferee liability, labor, product liability, employment, de facto merger, substantial continuity,

or other law, rule, or regulation, whether known or unknown as of the Closing Date, now

existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or

unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the

Closing Date. Except as otherwise provided herein or in the Stalking Horse APA, the transfer of the Purchased Assets to the Purchaser pursuant to the Stalking Horse APA shall not result in the Purchaser or the Purchased Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or any liens, claims, interests, or encumbrances.

34.     **Consideration**.     The consideration provided by the Purchaser under the Stalking Horse APA constitutes (i) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable Laws of the United States, any state, territory or possession thereof, or the District of Columbia. The consideration provided by the Purchaser for the Purchased Assets under the Stalking Horse APA is fair and reasonable and may not be avoided under Section 363(n) of the Bankruptcy Code.

35.     **Dallas County Claim**.     From Excluded Cash on hand after Closing of the Sale, the amount of $85,000 shall be set aside by the Debtors in a segregated account as adequate protection for the secured claim of Dallas County. Dallas County's liens shall attach to these proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors. These funds may be distributed only upon agreement between Dallas County and the Debtors, or by subsequent order of the Court, duly noticed to Dallas County. The foregoing shall be on the order of adequate protection and shall not constitute the allowance of the claims of Dallas County. Furthermore, the claims and liens of Dallas County shall remain

subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens.

36.    **Good Faith**.  The transactions contemplated by the Stalking Horse APA are undertaken by Purchaser without collusion and in good faith, as that term is used in Bankruptcy Code section 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption, assignment and sale of the Assigned Contracts) with Purchaser, unless such authorization is duly stayed pending such appeal.  Purchaser is a good faith purchaser of the Purchased Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m).

37.    **General Release**.  The general release set forth in Section 11.16 of the Stalking Horse APA is hereby incorporated herein by reference and is approved in all respects.  Effective as of the Closing Date, such general release shall be valid, binding and enforceable.

38.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Stalking Horse APA in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Stalking Horse APA be authorized and approved in its entirety; *provided*, *however*, that this Order shall govern if there is any inconsistency between the Stalking Horse APA (including all ancillary documents executed in connection therewith) and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall control.

178643.5

39.    **Non-Material Modifications**.  The Stalking Horse APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

40.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order shall alter, conflict with, or derogate from, the provisions of the Stalking Horse APA or this Order.

41.    **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the Debtors and Purchaser intend to close the Sale as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

178643.5

42.     **Calculation of Time**.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006.

43.     **Further Assurances**.  From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Stalking Horse APA including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Purchaser its right, title and interest in and to the Purchased Assets.

44.     **TZEW Holdco LLC**. Notwithstanding anything herein to the contrary, TZEW Holdco LLC ("TZEW Holdco"), although a Debtor in these Chapter 11 Cases, is not a party to the Stalking Horse APA, and no relief is being granted with respect to TZEW Holdco pursuant to this Order.

45.    **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Stalking Horse APA, all amendments thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned and sold by the Debtors to Purchaser in accordance with the Stalking Horse APA, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to  (a) interpret, implement and enforce the provisions of this Order and the Stalking Horse APA; (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale; (c) protect Purchaser against any Encumbrances or other interests in the Debtors or the Purchased Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

Dated: June 4th, 2020
Wilmington, Delaware

CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

178643.5