**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TZEW HOLDCO LLC, *et al.*,[1] | ) | Case No. 20-10910 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

**Objection Deadline: January 22, 2021 at 5:00 p.m. (ET)**
**Hearing Date: February 3, 2021 at 11:00 a.m. (ET)**

**DEBTORS' MOTION TO CONVERT CASES FROM**
**CHAPTER 11 TO CHAPTER 7 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this motion (the "Motion") for entry of an order converting these cases from chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") to chapter 7 of the Bankruptcy Code. In support of the Motion, the Debtors respectfully submit as follows:

**PRELIMINARY STATEMENT**

1.      After the commencement of the these chapter 11 cases, the Debtors marketed and sold substantially all of their assets (the "Sale"). The Sale was approved by the Court on June 4, 2020 and closed on June 8, 2020 (the "Closing Date"). Since the Closing Date, the Debtors' efforts have been focused on evaluating the potential for a consensual plan of liquidation with their key stakeholders, rejecting burdensome executory contracts and nonresidential real property leases, and winding down the remaining businesses of the Debtors. The Debtors, in consultation with the Official Committee of Unsecured Creditors (the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  PP Group, LLC (5579); PP Property Holdings, LLC (1013); PP Parks Beverage Company, LLC (2339); PP Parks Holdings, LLC (7913); PP Parks Management, LLC (2937); TZEW Holdco LLC (0252); TZEW Intermediate Corp. (1058).   The location of the Debtors' service address in these chapter 11 cases is: c/o Paladin Management, 633 W. 5th Street, 28th Floor, Los Angeles, CA 90071.

"Committee"), determined that a plan of liquidation in these chapter 11 cases is not feasible in light of the Debtors' estimate of administrative claims, the lack of availability of unencumbered assets, the limited prospect of future recoveries to the estates, and the lack of cash to fund a further wind down. Under the circumstances described more fully herein, the Debtors request that the Court grant the Motion to convert these cases from chapter 11 to chapter 7 of the Bankruptcy Code.

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and rule predicates for the relief sought herein are section 1112(a) of the Bankruptcy Code and Rules 1017(f) and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**RELIEF REQUESTED**

5.      The Debtors respectfully request that the Court (a) enter an order, pursuant to section 1112(a) of the Bankruptcy Code, converting these cases to cases under chapter 7 of the Bankruptcy Code effective February 5, 2020 (the "Conversion Effective Date"), (b) setting a deadline for the professionals of the Debtors and the Committee (the "Estate Professionals") to file final applications for fees and expenses incurred through the Conversion Effective Date, and (c) discharge the Debtors' claims and noticing agent retained in these cases.

**BACKGROUND**

6.      On April 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these chapter 11 cases.  On April 23, 2020, the Office of the United States Trustee appointed the Committee.

7.      The Debtors previously operated as a privately held owner-operator of amusement parks, resorts, and family entertainment centers across the country. The Debtors' locations included year-round family entertainment centers, water parks, and amusement parks in states across the country, including California, New Jersey, and Florida. Each of the Debtors' locations provided affordable, family-friendly entertainment to local markets and featured numerous attractions, including rides, games, and events.

8.      On June 4, 2020, the Court entered an order approving, among other relief, the sale (the "Sale") of certain of the assets of the Debtors to APX Operating Company, LLC

[Docket No. 300]. The Sale closed on June 8, 2020. The Debtors are continuing to administer their estates for the benefit of their creditors.

9.      The factual background regarding the Debtors, including their historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Scott Avila, Chief Restructuring Officer of Apex Parks Group, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 16] and fully incorporated herein by reference.

A.      **DIP Financing and Use of Cash Collateral**

10.      On the Petition Date, the Debtors filed their *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriorirty Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 26] (the "DIP Motion").  By the DIP Motion, the Debtors sought an agreement authorizing use of the cash collateral in accordance with an agreed upon budget and access to a debtor in possession credit facility (the "DIP Facility") that provided sufficient liquidity to fund any shortfall in operational needs so that the Debtors could complete a going concern Sale.

11.      On April 14, 2020, the Bankruptcy Court entered an order [Docket No. 59] (the "Interim DIP Order") authorizing the Debtors to borrow additional funds on a secured basis and the use of cash collateral in accordance with the budget. The postpetition borrowings and use of cash collateral enabled the Debtors to market and sell substantially all of their assets, as more fully described below. On June 2, 2020, the Bankruptcy Court entered an order [Docket

No. 298] (the "Final DIP Order"), granting the DIP Motion on a final basis and approving the

budget for the Debtors' operations through the closing of the Sale (the "Approved Budget").

    **B.**    **The Sale**

    12.    On April 12, 2020, the Debtors filed a motion (the "Sale Motion")

seeking, among other things, entry of an order (the "Sale Order") approving the proposed Sale of

substantially all of the assets (the "Purchased Assets") of the Debtors pursuant to the terms of

that certain asset purchase agreement, dated as of April 12, 2020 (including all exhibits and

schedules related thereto), as amended by that certain First Amendment to Asset Purchase

Agreement, dated as of May 7, 2020, and that certain Second Amendment to Asset Purchase

Agreement, dated as of May 18, 2020 (the "Asset Purchase Agreement") with APX Operating

Company, LLC (f/k/a APX Acquisition Company LLC), a Delaware limited liability company

(collectively with any nominee or designee thereof, the "Purchaser")[2].

    13.    On April 25, 2020, the Court entered an order [Docket No. 115] (the

"Bidding Procedures Order") approving certain bidding procedures (the "Bidding Procedures")

to be employed by the Debtors in connection with the marketing of the Purchased Assets.  In

accordance with such Bidding Procedures, and after an auction having been commenced and

thereafter conducted on May 11, 2020, the Debtors identified the bid of the Purchaser as the only

Qualifying Bid (as defined in the Bidding Procedures Order) and therefore the winning bidder.

*See Notice of Successful Bidder* [Docket No. 221].

    14.    On June 4, 2020, the Court entered the Sale Order approving the Sale

[Docket No. 300]. The Sale closed on June 8, 2020. In order to facilitate the post-closing

business operations by the Purchaser, the Debtors and the Purchaser entered into a *Transition*

---

[2]    Debtor TZEW Holdco LLC is not party to the Stalking Horse APA.

*Services Agreement* ("TSA"). The Court approved the TSA pursuant to the *Order in Furtherance of Sale Approving Transition Services Agreement* [Docket No. 299] entered on June 3, 2020.

        **C.**        **The UCC Settlement[3]**

        15.        During the course of these cases, the Committee engaged in good faith, arm's length negotiations with the Purchaser, the DIP Agent, and the Prepetition Lenders (collectively, with the Committee, the "UCC Settlement Parties") designed to resolve the Committee's concerns on a global basis. In order to avoid the cost of litigation to the Debtors' estates, the UCC Settlement Parties agreed to a global settlement (the "Global Settlement") pursuant to which the Committee agreed to support entry of the Final DIP Order and the Sale Order, with certain modifications as discussed below.

        16.        The terms of the Global Settlement included the following: (a) an amount funded for the Committee's professionals (the "Committee Carve-Out"), which amount was not subject to the Prepetition Liens, DIP Liens or Adequate Protection Replacement Liens; (b) the exclusion of certain claims and causes of action from the purchased assets of the Sale which remained assets of the Debtors' estates, and continue to be subject to a waterfall of any net proceeds of such excluded claims; (c) a waiver of certain avoidance actions by the Purchaser; and (d) a full and final release for the Purchaser in the Sale Order.

        17.        On June 4, 2020, the Court entered an order approving the UCC Settlement.

        **D.**        **Wind-Down Activities**

        18.        Following the Closing Date, the Debtors completed the process of resolving transition issues and post-closing obligations to the Purchaser. The Debtors also continued the wind down of their remaining assets by evaluating various nonresidential real

---

[3]    The following description of the UCC Settlement is intended only as a summary.

property leases and executory contracts. The Debtors have evaluated any remaining assets and causes of action. The Debtors have not been able to identify any potential recoveries that would fund the going-forward expenses related to (a) the thorough review and liquidation of the claims pending against the estates (both administrative claims and those that may have accrued prior to the Petition Date) and (b) the negotiation, preparation and confirmation of a liquidating plan.

19.     In light of the estates' lack of unencumbered assets, and to halt the ongoing accrual of administrative expenses, the Debtors believe that it is in the best interest of the estates to convert this chapter 11 case to a case under chapter 7 of the Bankruptcy Code and allow a chapter 7 trustee to complete the wind-down process.

## BASIS FOR RELIEF

20.     Section 1112(a) of the Bankruptcy Code governs the voluntary conversion from chapter 11 to chapter 7. Section 1112(a) provides that a debtor may convert a chapter 11 case to a case under chapter 7 at any time as of right. Specifically, section 1112(a) of the Bankruptcy Code states:

> The debtor may convert a case under this chapter to one under chapter 7 of this title unless —
>
> (1)     the debtor is not a debtor in possession;
>
> (2)     the case originally was commenced as an involuntary case under this chapter; or
>
> (3)     the case was converted to a case under this chapter other than on the debtor's request.

21.     Section 1112(a), therefore, gives a chapter 11 debtor the right to convert to chapter 7 unless one of the enumerated exceptions in section 1112(a)(1)-(3) is applicable. *See, e.g.*, *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) (stating that section 1112(a) "gives a debtor in possession an absolute right to convert, unless the case is governed by one of the enumerated exceptions"); *Abbott v. Blackwelder Furniture Co.*,

33 B.R. 399, 401 (W.D.N.C. 1983) ("Congress provided the Chapter 11 debtor with the absolute right to accomplish voluntary conversion to a Chapter 7 liquidation without Court approval."); *see also* Fed. R. Bankr. P. 1017(f)(1) and 1017(f)(2) (conversion under section 1112(a) is requested by motion under Bankruptcy Rule 9013 but is not to be treated as a contested matter under Rule 9014).

22.    In this chapter 11 case, none of the enumerated exceptions under section 1112(a) of the Bankruptcy Code apply:  (1) the Debtors are debtors in possession under sections 1107 and 1108 of the Bankruptcy Code; (2) these cases were commenced by the filing of voluntary chapter 11 petitions; and (3) these cases were not converted to chapter 11 from another chapter of the Bankruptcy Code. Thus, the Debtors are entitled, as a matter of right, to convert these cases to cases under chapter 7 of the Bankruptcy Code.

23.    In addition to the legal right to convert this chapter 11 case to chapter 7, the Debtors believe that converting these cases is in the best interest of the Debtors' estates and creditors. The Debtors continues to incur administrative expenses and have insufficient unencumbered cash to prosecute a chapter 11 plan. Accordingly, the Debtors respectfully request that the Court enter an order converting these cases from chapter 11 to chapter 7 of the Bankruptcy Code.

## MONTHLY AND FINAL FEE APPLICATIONS

24.    As of the date of the hearing on this Motion, the Debtors believe that all estate professionals will have filed their monthly fee applications and final fee applications for fees and expenses incurred through the proposed hearing date of the Motion. As a result, the Debtors propose setting **January 27, 2021 at 4:00 p.m. (ET)** as the objection deadline for all final fee applications submitted by professionals employed by the estate for fees and expenses

incurred through the Conversion Effective Date. The Debtors further propose that the hearing on these fee applications occur on shortened notice at the hearing on the Motion.

## DISCHARGE OF NOTICING AND CLAIMS AGENT

25.     On April 14, 2020, the Court entered an order [Docket No. 48] authorizing the Debtors to retain Kurtzman Carson Consultants ("KCC") as its claims and noticing agent. Upon the conversion of this chapter 11 case to chapter 7, retaining a claims and noticing agent will be at the discretion of the chapter 7 trustee appointed to administer the chapter 7 case. Accordingly, the Debtors request authorization to discharge KCC from providing any further services after the Conversion Effective Date.

## NOTICE

26.     The Debtors will provide notice of this motion to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the Committee; (c) counsel to the agent under the Debtors' prepetition revolving credit facilities and prepetition term loan facility (the "Prepetition Agent"); (d) counsel to the agent under the Debtors' postpetition credit facility; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the state attorneys general for all states in which the Debtors conduct business; and (h) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

27.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto converting these cases from chapter 11 to chapter 7 of the Bankruptcy Code and grant the Debtors such additional relief as necessary and appropriate.

Dated: December 31, 2020                      **PACHULSKI STANG ZIEHL & JONES LLP**


                                             */s/ Timothy P. Cairns*
                                             Laura Davis Jones (DE Bar No. 2436)
                                             David M. Bertenthal (CA Bar No. 167624)
                                             Timothy P. Cairns (Bar No. 4228)
                                             919 North Market Street, 17th Floor
                                             P.O. Box 8705
                                             Wilmington, Delaware  19899 (Courier 19801)
                                             Telephone:  (302) 652-4100
                                             Facsimile:   (302) 652-4400
                                             Email: ljones@pszjlaw.com
                                                      dbertenthal@pszjlaw.com
                                                      tcairns@pszjlaw.com

                                             Counsel to the Debtors and Debtors in Possession