## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TZEW HOLDCO LLC, *et al.*[1] | Case No. 20-10910 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing date: Feb. 3, 2021 at 11:00 a.m. (ET)** |
| | **Obj. deadline:  Jan. 27, 2021 at 4:00 p.m. (ET)** |

## MOTION OF PROTECTIVE LIFE INSURANCE COMPANY FOR AUTHORIZATION TO EXERCISE RECOUPMENT RIGHTS OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY TO EXERCISE SETOFF RIGHTS

Protective Life Insurance Company ("Protective"), by and through undersigned counsel, hereby moves (this "Motion") the Court pursuant to 11 U.S.C. §§ 105(a), 362(d)(1), and 553(a)[2] for entry of an order, substantially in the form attached hereto as **Exhibit "A"** (the "Proposed Order"), acknowledging Protective's authority to exercise recoupment rights or, in the alternative, granting Protective relief from the automatic stay to exercise setoff rights.  In support of this Motion, Protective respectfully represents as follows:

### JURISDICTION AND VENUE

1.    Protective files this Motion pursuant to §§ 105, 362(d)(1), and 553(a) of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PP Group, LLC (5579); PP Property Holdings, LLC (1013); PP Parks Beverage Company, LLC (2339); PP Parks Holdings, LLC (7913); PP Parks Management, LLC (2937); TZEW Holdco LLC (0252); and TZEW Intermediate Corp. (1058). The location of the Debtors' service address in these chapter 11 cases is: c/o Paladin Management, 633 W. 5th Street, 28th Floor, Los Angeles, CA 90071.

[2] Hereinafter, all code sections refer to title 11 of the United States Code, §§ 101, *et seq.* (the "Bankruptcy Code) unless otherwise noted.

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Pursuant to Local Rule 9013-1(f), Protective consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court lacks Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.      On April 8, 2020 (the "Petition Date"), TZEW Holdco LLC, along with numerous affiliates (collectively, the "Debtors"), including PP Group, LLC f/k/a Apex Parks Group, LLC ("Apex Parks"), each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5.      Prior to the Petition Date, on May 16, 2017, Apex Parks initiated Civil Action No. 01-CV-2017-000165 (the "Circuit Court Litigation") in the Circuit Court of Jefferson County, Alabama, Birmingham Division (the "Circuit Court") by filing a complaint (the "Complaint") against Protective alleging claims for breach of contract and bad faith related to a $10 million insurance policy (the "Policy") that Protective issued to Apex Parks to offset potential business losses if the CEO of Apex Parks, Alexander Weber, died.  Specifically, Apex Parks alleged that Protective (a) breached its contract following Weber's death by not paying Apex Parks' claim for $10 million on the Policy Protective issued and (b) denied Apex Parks' claim in bad faith.

6.      On July 12, 2017, Protective filed an answer to the Complaint and asserted counterclaims against Apex Parks seeking, *inter alia*, rescission of the Policy. Protective subsequently amended its counterclaims (the "Amended Counterclaims") on December 20, 2017. In particular, Protective alleged that, in applying for the Policy, Apex Parks and Weber, *inter*

2

*alia*, made material misrepresentations about Weber's health and ownership in Apex Parks, which misrepresentations allowed Protective to rescind the policy as a matter of law and rendered the policy void *ab initio*.

7.      On August 3, 2017, pursuant to the Circuit Court's *Revised Order to Tender Funds to the Clerk of Court* (the "Circuit Court Order to Tender Funds"), Protective tendered $91,800.84 (the "Policy Refund") to the clerk of the Circuit Court.  The Policy Refund was comprised of funds Apex Parks had previously paid as premiums for the Policy, plus applicable interest. A true and correct copy of the Circuit Court Order to Tender Funds is attached hereto as **Exhibit "B"**.

8.      On September 21, 2018, following a two-week trial, a jury returned a verdict in favor of Apex Parks on its breach of contract claim and in favor of Protective on Apex Parks' bad faith claim.

9.      On October 29, 2018, following a jury trial, the Circuit Court entered a judgment against Protective on the jury's verdict on the breach of contract claim, inclusive of pre-judgment interest, in the amount of $11,495,890.41 (the "Circuit Court Judgment").  Thereafter, the Circuit Court also entered an *Order on Pending Motions* (the "Renewed JMOL Order") denying a renewed motion for judgment as a matter of law or, alternatively, a motion for a new trial filed by Protective.

10.     On March 26, 2019, Protective filed a notice of appeal to the Supreme Court of Alabama appealing the Circuit Court Judgment and Renewed JMOL Order.

11.     Protective filed its appellate brief in January 2020 arguing that (a) the Circuit Court erroneously denied Protective's motion for judgment as a matter of law because Protective was entitled to rescind the policy as a result of a material misrepresentation made by Weber; and

3

(b) an erroneous jury instruction regarding the materiality of a misrepresentation undermined Protective's case and warranted a new trial. Briefing for the issues on appeal concluded in March 2020.

12.     Apex Parks filed its bankruptcy petition in the Court two weeks after the close of briefing in the Supreme Court of Alabama. Protective then filed a *Suggestion of Bankruptcy* in the Alabama Supreme Court and a motion in this Court for an order confirming that the automatic stay does not apply to the appeal, or, in the alternative, granting relief from the automatic stay to allow the appeal to proceed to completion. (Doc. 409) (the "<u>Stay Scope Motion</u>").

13.     No party objected to the Stay Scope Motion, and the Court entered an order granting that motion on September 17, 2020 (Doc. 438) (the "<u>Stay Scope Order</u>").  The Stay Scope Order provided that the automatic stay "does not apply to, or, to the extent it does not apply, it is modified to allow the Appeal to proceed to completion." *Id.*

14.     The following day, the Supreme Court of Alabama entered an opinion (the "<u>Alabama Supreme Court Opinion</u>") reversing the Circuit Court Judgment and rendering total judgment in favor of Protective. In sum, the Supreme Court of Alabama found that the Circuit Court should have granted Protective's motions for judgment as a matter of law because Protective was entitled to rescind the Policy due to material misrepresentations made by Weber to Protective, and, as a result, Protective had a complete defense to Apex Parks' breach of contract claims. A true and correct copy of the Alabama Supreme Court Opinion is attached hereto as **Exhibit "C"**.

15.     On October 6, 2020, the Supreme Court of Alabama entered the *Certificate of Judgment* (the "<u>Alabama Supreme Court Judgment</u>") certifying its judgment and taxing costs

4

against Apex Parks pursuant to Rule 35 of the Alabama Rules of Appellate Procedure. A true and correct copy of the Alabama Supreme Court Judgment is attached hereto as **Exhibit "D"**.

16.     In accordance with Rule 35 of the Alabama Rules of Appellate Procedure, Protective filed the *Defendant Protective Life Insurance Company's Verified Itemization of Costs* (the "Itemization of Costs") in the Circuit Court. A true and correct copy of the Itemization of Costs is attached hereto as **Exhibit "E"**. As explained in the Itemization of Costs, Protective is entitled to an award of $103,546.81 from Apex Parks (the "Award of Costs").  All of the costs that Protective seeks are pre-petition costs incurred prior to the Chapter 11 Cases.

17.     In the Itemization of Costs, Protective also explained that Apex Parks had initiated its Chapter 11 Case, that the Court had entered the Stay Scope Order, that Protective was submitting the Itemization of Costs as a final stage of the appellate process to establish the amount of Apex Parks' financial obligation to Protective based on Protective's successful appeal and not as an effort to collect the amount owed from Apex Parks, and that Protective would seek recovery of the Award of Costs through the Court from property of Apex Parks' bankruptcy estate, including without limitation by setoff against the Policy Refund in full compliance with the Bankruptcy Code.

18.     On January 19, 2021, Protective filed a proof of claim in the Chapter 11 Cases for the Award of Costs in an undetermined amount (the "Protective Claim"). Protective files this Motion seeking authority to exercise its rights to recoup and/or setoff the Award of Costs against the Policy Refund.

## **RELIEF REQUESTED**

19.     By this Motion, Protective requests entry of an order substantially similar to the Proposed Order acknowledging, out of an abundance of caution, Protective's authority to recoup

5

the Protective Claim against the Policy Refund or, in the alternative, granting Protective relief from the automatic stay for cause pursuant to § 362(d) of the Bankruptcy Code to set off the Protective Claim against the Policy Refund.

## BASIS FOR RELIEF

### I.    Protective is entitled to recoup the Protective Claim against the Policy Refund.

20.    Protective is entitled to recoup its claim against the Policy Refund. "Recoupment is an equitable remedy that permits the offset of mutual debts arising from the same transaction or occurrence." *Miller v. Zurich Am. Ins. Co. (In re WL Homes LLC)*, 563 B.R. 512, 516 (Bankr. D. Del. 2017). For recoupment to apply, "[b]oth debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *MBNA Am. Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 275 B.R. 712, 721 (Bankr. D. Del. 2002) (quoting *Unv. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1080–81 (3d Cir. 1992)).

21.    The "same transaction" requirement is satisfied here. Both the Protective Claim and the Policy Refund arise from a single contract—the Policy—and the parties do not have any obligations to each other that do not arise from the Policy. Indeed, courts have generally held that insurers can recoup money owed by an insured against money owed to the insured under an insurance policy. *See WL Homes LLC*, 563 B.R. at 517 (allowing an insurer to recoup reimbursable defense costs against overpaid premiums owed to insured); *Caldwell v. Cont'l Am. Ins. Co. (In re Caldwell)*, 350 B.R. 182, 195–97 (Bankr. E.D. Pa. 2006) (permitting an insurer to recoup funds owed by an insured against the payment of benefits owed to the insured); *Georgetown Steel Co. v. Capital City Ins. Co. (In re Georgetown Steel Co.)*, 318 B.R. 313, 333–34 (Bankr. D.S.C. 2004) (allowing an insurer to recoup amounts due from insured against a

premium refund); *Aetna Life Ins. Co. v. Bram (In re Bram)*, 179 B.R. 824, 826–27 (Bankr. E.D. Tex. 1995) (allowing an administrator of long-term disability benefits to recoup overpaid benefits against additional benefits owed to insured). Further, both debts here specifically arise from the Circuit Court Litigation over the Policy—the Circuit Court Order to Tender Funds, on the one hand, and the Award of Costs, on the other—and therefore are part of the same transaction.

22.     Moreover, equity weighs in favor of permitting Protective to recoup its claim against the Policy Refund because it would be inequitable to allow Apex Parks to enjoy the benefits of the Policy Refund without meeting its obligations to Protective under the Policy and in its lawsuit alleging a breach of the Policy. *See WL Homes*, 563 B.R. at 517–28 (finding recoupment proper when it would be inequitable to allow the debtor to enjoy policy benefits without meeting its obligations to the insurer); *Trans World Airlines, Inc.*, 275 B.R. at 720–21 (allowing recoupment when it would be inequitable for the debtor to enjoy the benefits of an agreement without meeting its obligations thereunder). As determined by the Supreme Court of Alabama, Weber made material misrepresentations to Protective, which entitled Protective to rescind the Policy. It would be inequitable to allow Apex Parks to enjoy the benefits of the Policy Refund without paying the Protective Claim resulting from Apex Parks' unsuccessful lawsuit against Protective arising from that same policy.

23.     Thus, Protective may recoup the Protective Claim against Apex Parks from the Policy Refund owed to Apex Parks.

24.     A creditor's exercise of the right of recoupment does not require relief from the automatic stay. *Trans World Airlines, Inc.*, 275 B.R. at 720 (citing *Univ. Med. Ctr.*, 973 F.2d at 1080). Nevertheless, out of an abundance of caution, Protective requests that the Court enter the

7

Proposed Order recognizing the ability of Protective to recoup the Protective Claim against the Refund Policy.

## II. Alternatively, Protective should be granted relief from the automatic stay to allow it to set off the Protective Claim against the Policy Refund.

25.     While the Court does not need to reach this issue because Protective possesses valid and enforceable recoupment rights, in the alternative, the Court should grant Protective relief from the automatic stay to allow Protective to set off the Protective Claim against the Refund Policy pursuant to § 553.

26.     Setoff is an equitable right that "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (citation omitted). A creditor who has the right to setoff may obtain relief from the automatic stay in order to implement the setoff. *In re Garden Ridge Corp.*, 338 B.R. 627, 631–32 (Bankr. D. Del. 2006), *aff'd*, 399 B.R. 135 (D. Del. 2008), *aff'd*, 386 F. App'x 41 (3d Cir. 2010).

27.     Section 553, which preserves a creditor's exercise of setoff rights under non-bankruptcy law, provides, in relevant part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect the right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a).

28.     Because § 553 does not create a right of setoff, "setoff is appropriate in bankruptcy only when a creditor both enjoys an independent right of setoff under applicable non-bankruptcy law, and meets the further Code-imposed requirements and limitations set forth in

8

section 553." *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010).

29.     Here, Protective has an independent right of setoff because California law, which governs the Policy,[3] recognizes the equitable right to setoff. *See In re Kelley*, No. 11-27648-ES, 2012 WL 5878240, at *2 (C.D. Cal. Nov. 20, 2012) (quoting another source) ("The Supreme Court [of California] has also held: '[I]t is well settled that a court of equity will compel a set-off when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered.'"); *In re Ter Bush*, 273 B.R. 625, 629 (Bankr. S.D. Cal. 2002) (finding that a party asserting setoff had an independent right of setoff because "California law recognizes the equitable right to setoff").

30.     Further, the elements of § 553(a) are satisfied. In order for a creditor to exercise a right of setoff, § 553 requires the creditor to show: (a) a debt exists from the creditor to the debtor that arose before the commencement of the bankruptcy case; (b) the creditor has a claim against the debtor that arose before the commencement of the bankruptcy case; and (c) the debt and the claim are mutual obligations. *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 262–63 (3d Cir. 2000) (citations omitted).

31.     First, the Policy Refund, which Protective paid the clerk of the Circuit Court in August 2017 (years before these bankruptcy cases), arises from a pre-petition contract, the

---

[3] Delaware applies the Restatement (Second) Conflict of Laws. *See Lipscomb v. Clairvest Equity Partners Limited Partnership (In re LMI Legacy Holdings, Inc.)*, No. 13-12098 (CSS), 2017 WL 1508606, at *5 (Bankr. D. Del. Apr. 27, 2017) (explaining that the Delaware bankruptcy court generally applies the forum's choice-of-law rule and that Delaware courts apply the Restatement (Second) of Conflict Laws). "Section 188 of the Restatement weighs various factors in determining which law to apply, including: (1) where the contract was negotiated, (2) the place of performance, (3) the location of the subject matter of the contract, and (4) the place of incorporation and place of business of the contracting parties." *In re Orion Ref. Corp.*, 372 B.R. 688, 694 (Bankr. D. Del. 2007). Here, these factors weigh in favor of applying California law. The Policy was issued and delivered to Apex Parks in California. Moreover, the Circuit Court and the Supreme Court of Alabama, applying Alabama choice-of-law rules, applied California substantive law in interpreting the parties' obligations under the Policy.

RLF1 24647609v.1

Policy. Second, the Protective Claim likewise arises from the Policy and, as reflected in the Itemization of Costs, is for pre-petition costs incurred by Protective between July 2017 and January 2020 in pre-petition litigation. Third, the Policy Refund and Protective Claim are mutual obligations because Apex Parks' claim as to the Policy Refund is against Protective, and Protective's Claim is against Apex Parks. *In re SemCrude, L.P.*, 399 B.R. at 393 (quoting another source) (holding that debts are considered "mutual" under § 553(a) "when 'they are due to and from the same persons in the same capacity'").

32.     For these reasons, Protective holds a valid and enforceable right of setoff with respect to the Policy Refund, and the Court should grant Protective relief from the automatic stay to exercise its setoff rights with respect to the Policy Refund.

33.     Finally, Protective requests that the Court waive the fourteen-day stay provided in Bankruptcy Rule 4001(a)(3) and allow Protective to exercise its setoff rights immediately.

## NOTICE

34.     Pursuant to Bankruptcy Rule 4001(a) and Local Rule 4001-1(a), notice of this Motion has been provided to: (i) counsel for the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel for all official committees appointed in these Chapter 11 Cases; (iv) all parties requesting notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002; and (v) all known parties having an interest in the relief requested. Protective submits that no other or further notice need be provided.

## CONCLUSION

35.     For the foregoing reasons, Protective respectfully requests that the Court enter an order substantially similar to the Proposed Order and such other relief as the Court deems just and appropriate.

RLF1 24647609v.1

Dated: January 19, 2021
     Wilmington, Delaware

Respectfully submitted,

*/s/ Cory D. Kandestin*
Cory D. Kandestin (No. 5025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701
Email: kandestin@rlf.com

-and-

**MAYNARD, COOPER & GALE, P.C.**
Evan N. Parrott (*pro hac vice* application to be filed)
11 North Water Street
Suite 24290
Mobile, AL  36602
(251) 206-7449
eparrott@maynardcooper.com

*Attorneys for Protective Life Insurance Company*

11